JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

M.S. Willman

**DEFENDANTS**

1. Attorney General of the United States
2. Attorney General State of Michigan
3. Governor State of Michigan
4. Director Michigan State Police

**(b)** County of Residence of First Listed Plaintiff    Oakland , MI
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    District of Columbia
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Daniel C. Willman,
P.O. 606 Pinckney, MI 48169
248-231-0705

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

❏ 1  U.S. Government Plaintiff

❏ 3  Federal Question *(U.S. Government Not a Party)*

☒ 2  U.S. Government Defendant

❏ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ❏ 1 | Incorporated *or* Principal Place of Business In This State | ❏ 4 | ❏ 4 |
| Citizen of Another State | ❏ 2 | ❏ 2 | Incorporated *and* Principal Place of Business In Another State | ❏ 5 | ❏ 5 |
| Citizen or Subject of a Foreign Country | ❏ 3 | ❏ 3 | Foreign Nation | ❏ 6 | ❏ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ❏ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ❏ 625 Drug Related Seizure of Property 21 USC 881 | ❏ 422 Appeal 28 USC 158 | ❏ 375 False Claims Act |
| ❏ 120 Marine | ❏ 310 Airplane / ❏ 365 Personal Injury - Product Liability | ❏ 690 Other | ❏ 423 Withdrawal 28 USC 157 | ❏ 376 Qui Tam (31 USC 3729(a)) |
| ❏ 130 Miller Act | ❏ 315 Airplane Product Liability / ❏ 367 Health Care/ | | | ❏ 400 State Reapportionment |
| ❏ 140 Negotiable Instrument | ❏ 320 Assault, Libel & Slander / Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ❏ 410 Antitrust |
| ❏ 150 Recovery of Overpayment & Enforcement of Judgment | ❏ 330 Federal Employers' / Product Liability | | ❏ 820 Copyrights | ❏ 430 Banks and Banking |
| ❏ 151 Medicare Act | Liability / ❏ 368 Asbestos Personal | | ❏ 830 Patent | ❏ 450 Commerce |
| ❏ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ❏ 340 Marine / Injury Product Liability | | ❏ 835 Patent - Abbreviated New Drug Application | ❏ 460 Deportation |
| | ❏ 345 Marine Product Liability / **PERSONAL PROPERTY** | | ❏ 840 Trademark | ❏ 470 Racketeer Influenced and Corrupt Organizations |
| ❏ 153 Recovery of Overpayment of Veteran's Benefits | ❏ 350 Motor Vehicle / ❏ 370 Other Fraud | **LABOR** | **SOCIAL SECURITY** | ❏ 480 Consumer Credit |
| ❏ 160 Stockholders' Suits | ❏ 355 Motor Vehicle Product Liability / ❏ 371 Truth in Lending | ❏ 710 Fair Labor Standards Act | ❏ 861 HIA (1395ff) | ❏ 490 Cable/Sat TV |
| ❏ 190 Other Contract | ❏ 360 Other Personal Injury / ❏ 380 Other Personal Property Damage | ❏ 720 Labor/Management Relations | ❏ 862 Black Lung (923) | ❏ 850 Securities/Commodities/ Exchange |
| ❏ 195 Contract Product Liability | ❏ 362 Personal Injury - Medical Malpractice / ❏ 385 Property Damage Product Liability | ❏ 740 Railway Labor Act | ❏ 863 DIWC/DIWW (405(g)) | ❏ 890 Other Statutory Actions |
| ❏ 196 Franchise | | ❏ 751 Family and Medical Leave Act | ❏ 864 SSID Title XVI | ❏ 891 Agricultural Acts |
| | | ❏ 790 Other Labor Litigation | ❏ 865 RSI (405(g)) | ❏ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ❏ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ❏ 895 Freedom of Information Act |
| ❏ 210 Land Condemnation | ☒ 440 Other Civil Rights / **Habeas Corpus:** | | ❏ 870 Taxes (U.S. Plaintiff or Defendant) | ❏ 896 Arbitration |
| ❏ 220 Foreclosure | ❏ 441 Voting / ❏ 463 Alien Detainee | | ❏ 871 IRS—Third Party 26 USC 7609 | ❏ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ❏ 230 Rent Lease & Ejectment | ❏ 442 Employment / ❏ 510 Motions to Vacate Sentence | | | ❏ 950 Constitutionality of State Statutes |
| ❏ 240 Torts to Land | ❏ 443 Housing/ Accommodations / ❏ 530 General | | | |
| ❏ 245 Tort Product Liability | ❏ 445 Amer. w/Disabilities - Employment / ❏ 535 Death Penalty | **IMMIGRATION** | | |
| ❏ 290 All Other Real Property | ❏ 446 Amer. w/Disabilities - Other / **Other:** | ❏ 462 Naturalization Application | | |
| | ❏ 448 Education / ❏ 540 Mandamus & Other | ❏ 465 Other Immigration Actions | | |
| | ❏ 550 Civil Rights | | | |
| | ❏ 555 Prison Condition | | | |
| | ❏ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding    ❏ 2 Removed from State Court    ❏ 3 Remanded from Appellate Court    ❏ 4 Reinstated or Reopened    ❏ 5 Transferred from Another District *(specify)*    ❏ 6 Multidistrict Litigation - Transfer    ❏ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
34 U.S.C. 20901

Brief description of cause:
Constitutionality of Federal SORNA and State SORA, Sex offender registry

## VII. REQUESTED IN COMPLAINT:

❏ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $ Declaratory $1,000,000.

CHECK YES only if demanded in complaint:
JURY DEMAND:    ❏ Yes    ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____    DOCKET NUMBER _____

DATE
02-05-2019

SIGNATURE OF ATTORNEY OF RECORD
S/Daniel C. Willman

**FOR OFFICE USE ONLY**

RECEIPT #    AMOUNT    APPLYING IFP    JUDGE    MAG. JUDGE

## PURSUANT TO LOCAL RULE 83.11

1.    Is this a case that has been previously dismissed?    ☐ Yes
                                                             ☑ No

If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____


2.    Other than stated above, are there any pending or previously    ☐ Yes
      discontinued or dismissed companion cases in this or any other   ☑ No
      court, including state court? (Companion cases are matters in which
      it appears substantially similar evidence will be offered or the same
      or related parties are present and the cases arise out of the same
      transaction or occurrence.)

If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____


Notes :

Defendant United States Attorney General has 60 days to Respond. Plaintiff has extended the same 60 day time to respond to all State of Michigan Defendants, it is noted in the Summons if the Court finds that acceptable.

If not acceptable State of Michigan Defendant counsel can enter an apperence via EFC and Counsel for Plaintiff will stipulate to 60 provided Defense counsel prepares and  files the stipulation after consultation with Counsel for Plaintiff.

Per Local Rule 7.1  Counsel for Plaintiff made attempts to contact counsel for all Defendants but was unsuccessful.

The 60 day period does not apply to Plaintiff F.R.C.P. 65 Motion.  That is left to the sole discretion of the Court.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN  DIVISION

———

M. S. Willman                                         Case No:

             Plaintiff                            Judge.Hon:

v.
                                      Mag.Hon.

United States Office of Attorney General,
State of Michigan Office's of
Attorney General, Governor                     LR. 9.1 (b) Constitutionality
and Director of Michigan State Police
in their Official Capacities                        **Complaint**


             Defendants.
_____/
Daniel C. Willman (P55867)
P.O. 606
Pinckney, MI 48169
248-231-0705
danielcwillman@aol.com
Attorney for Plaintiff


## COMPLAINT

**1.  FEDERAL SORNA ACT  34 U.S.C. §20901 AND MICHIGAN SORA ACT (SORA) MCL 28.721 ARE UNCONSTITUTIONAL L.R 9.1 (b)**

**NOTE:**     **There is a filed Appendix in Support of Complaint and F.R.C.P. 65 Motion.**

**NOTE:**     **The terms registrant or registrants are also intended to include Plaintiff.**

## JURISDICTION AND VENUE

1.     Jurisdiction in this matter arises under 28 U.S.C. § 1331 (Federal Question), 28 U.S.C. § 1367 (a) (Supplemental Jurisdiction), the 1st, 4th, 5th, and 14th Amendments, Articles I, IV, U.S. Constitution[1] and 42 U.S.C. §1983.

2.     Plaintiff is a State of Michigan resident and within this Court's jurisdiction.

3.     The Office of the Attorney General of the United States is a named defendant since the office is charged with defending challenges to the Constitutionality of United States statutes.  In this matter 34 U.S.C. §20901; formerly, 42 U.S.C. §16901 a.k.a SORNA ( 2017, moved to criminal code, Appendix pg 141).

4.     Via 34 U.S.C. § 20901 the Attorney General of the U.S. is the chief enforcer of SORNA and SORA type statutes[2]. (34 U.S.C. § 20916 and § 20945).

---

[1]

1st Amendment- privacy- freedom of association, 5th Amendment -double jeopardy-multiple punishments, 4th Amendment seizure, 8th Amendment, cruel and unusual punishment, 14th Amendment, Privileges Immunities Clause, due process and equal protection. Article 1 § 9, Article 1 §10 Ex post facto clause,Article IV, Sec 2, Clause 1 Sec 1, Clause 2.  Privileges and Immunities Clause,   Article IV, § 2, Clause 2 Comity , Article VI, Sec 2 Supremacy clause.

[2]

**34 USC § 20912 Registry requirements for jurisdictions**
(b) Guidelines and regulations **The Attorney General shall issue guidelines** and regulations to interpret and implement this subchapter.

**34 USC § 20927. Failure of jurisdiction to comply**
**(a)** In general

2

5.      The Attorney General's Office of the State of Michigan is a proper defendant as the Chief enforcer of the State of Michigan's complied statutes including the statutes in question in regard to this matter.

6.      The Governor's Office of the State of Michigan's Office is a proper defendant. Per Art. 5, § 1 of the Michigan Constitution the Governor shall take care that applicable federal and state laws are faithfully executed and is charged with supervision of all state departments, including the Michigan State Police.

7.      The Office of the Director of the Michigan State Police is a proper defendant since that office maintains the State of Michigan sex offender registry (herein SORA). M.C.L. § 28.721.

8.      Plaintiff reserves the right to amend his Complaint and sue former State of Michigan Attorney General Bill Schuette, former Governor of Michigan Richard Synder and former Director of the Michigan State Police Col.Kriste Etue, in their individual capacities, based on the fact that during their time in

---

For any fiscal year after the end of the period for implementation, a jurisdiction that fails, **as determined by the Attorney General**, to substantially implement this subchapter shall not receive **10** percent of the funds that would otherwise be allocated for that fiscal year to the jurisdiction...
**(b)(4)** Funding reduction
**34 USC § 20917**. **Direction to the Attorney General**
**34 U.S.C. § 20945**.

office and based on their collective intentional actions the State of Michigan refuse to recognize the Stare Decisis holding and application of Does #1-5 v. Snyder, 834 F3d 696 (6th Cir. 2016).

9.  In Does #1-5 v. Snyder, 834 F3d 696 (6th Cir. 2016). the United States Sixth Circuit Court of Appeals held that Michigan's Sex Offender Registration Act (SORA), MCL 28.721 et seq., is retroactive punishment in violation of Article 1 § 9, Article 1 §10 Ex post facto clause of United States Constitution.

10. Plaintiff reserves the right to amend his Complaint to sue the current State of Michigan offices holders in their individual capacities if they decide to continue to embrace the punitive polices of the last administration in regard to the application of Does #1-5 v. Snyder.

11. It is Plaintiff's contention that the 2006 and 2011 Sex Offender Registration and Notification Act (SORNA), 34 U.S.C. §20901, and its sections (current and past) and (SORA) MCL 28.721 (and SORA type statutes containing similar language) violates multiple provisions of the U.S. Constitution.

12. The United States Department of Justice (herein DOJ) has acknowledged that the United States Sixth Circuit Court of Appeals decision in Does v. Synder is binding on the States within the Circuits jurisdiction: Kentucky, Michigan, Ohio and Tennessee. (Taken directly from the United States Department of

4

Justice https://smart.gov/caselaw.htm).

13. Plaintiff's conviction predates enactment of SORNA and SORA, enforcement of either statue against Plaintiff is retroactive punishment in violation of Article 1 §10 Ex post facto, United States Constitution.

14. Upon losing their appeal (in Does v. Synder) in the U.S. 6th Circuit Court of Appeals, the State of Michigan defendants sought a writ of certiorari from the United States Supreme Court.

15. In October 2017, the United States Supreme Court denied cert in Does #1-5 v. Snyder, 834 F3d 696 (6th Cir. 2016), reh'g denied (Sept. 15, 2016), cert. denied sub nom. Snyder v. John Does #£ 1-5, __ U.S. __, 138 S.Ct. 55, 199 L.Ed.2d 18 (2017) thus affirming the opinion in the above case, making the decision controlling and binding for the states in the circuit a fact acknowledged by the DOJ: Kentucky, Michigan, Ohio and Tennessee. https://smart.gov/caselaw.htm. Office of Sex Offender Sentencing, Monitoring, Apprehending, Registering, and Tracking March 2018 Appendix pg 7-8). Also see 34 U.S.C. §20945 Appendix pg 75, authority to reach decision.

16. The State of Michigan is still unlawfully enforcing invalidated provisions of SORA despite the 6th Circuit ruling in Does #1-5 v. Snyder.

17. In a show of direct contempt and repudiation of Stare Decisis and the United

States Constitution the Michigan Court of Appeals dating between June 26, 2018 and November 15, 2018 has openly rejected the findings (in Does #1-5 v. Snyder) in several unpublished Per Curium opinions and 1 published opinion dated August 2, 2018. At least one panel granted relief from the 2006 and 2011 Amendments because the conviction predated both. (Appendix pg 110).

18. To justify not following the holding of Does #1-5 v. Snyder, 834 F3d 696 (6th Cir. 2016) the Michigan Court of Appeals has repeatedly stated:

However, unlike previously published decisions of this Court, decisions by the federal courts other than the United States Supreme Court are not binding on this Court. See Abela v Gen Motors Corp, 469 Mich. 603, 606-607; 677 N.W.2d 325 (2004). **Because the earlier decisions of this Court are binding, MCR 7.215(J)(1), we are not at liberty to follow a conflicting decision rendered by the Sixth Circuit.** Michigan v. Fabela, No. 337365, Court of Appeals of Michigan. June 26, 2018-UNPUBLISHED: Appendix pg 128 .

19. The State of Michigan Defendants in fact know Does v. Synder is a Stare Decisis opinion:

[A] letter to the Michigan Supreme Court, the **Solicitor General of Michigan** stated that **Doe is entitled to "precedential weight" and that "the State waives the argument that it may retroactively apply the 2006 and 2011 amendments to [SORA]."** October 10, 2017 Supplemental Authority Letter from the Solicitor General to Larry Royster, Clerk of the Court, People v Temelkowski, 901 N.W.2d 842 (2017). **Spencer, v. Benzie County, No. 337827, Court of Appeals of**

6

**Michigan, November 14, 2017. UNPUBLISHED**[3]. (Appendix pg 134).

20.    The  Does #1-5 v. Snyder, 834 F3d 696 (6th Cir. 2016)  court held SORA

violated the Ex  post facto clause of the United States Constitution making the

holding in fact binding on the State of Michigan. Marbury v. Madison, 5 U.S.

(1 Cranch) 137 (1803) Article VI, Sec 2 Supremacy Clause ( Federalist 81).

## BACKGROUND FACTS OF PLAINTIFF'S CONVICTION

21.    On November 2, 1993 Plaintiff was convicted and sentenced under  M.C.L.

750.520 G1 - Criminal Sexual Conduct Assault with Intent to Commit Sexual

Penetration and  robbery. **(**Appendix pg 142)

22.    On the night of the allegations leading to his conviction Plaintiff went out for

the night with another party, his co-defendant.

23.    According to the victim she was ordered into a car by one  of  the  two

defendants.

24.    Eventually the victim was let out of the car unharmed and within minutes was

able to call the police, leading to a traffic stop and arrests.

---

[3]

In spite of the paragraph above the Plaintiff was subjected to continued litigation, which apparently just recently ended. Michigan v. Spencer, Nos. 343468, 343367 COA. Michigan January 22, 2019  UNPUBLISHED.  The Court in Spencer held later amendments to SORA which predated sentence did not affect Defendant  (only 1999 PA 85 applies to defendant, later changes to SORA do not affect his case.  Appendix pg 138).

25. The victim was never physically touched by either defendant.

26. Plaintiff was offered a 4 year flat sentence plea on a firearm charge. Since Plaintiff did not possess or use any weapon he did not accept the plea.

27. Plaintiff's co-defendant fled the state before Plaintiff's trial. The co-defendant never stood trial, the victim never saw him or testified against him.

28. With his alleged co-defendant on the run Plaintiff was convicted in a bench trial though the victim stated several times in regard to the identity of plaintiff that she could not remember.

29. Plaintiff served 10 yrs and successfully completed parole.

30. The alleged co-defendant was later captured and is still in prison 25 yrs later.

31. When Plaintiff was sentence in 1993 SORNA and SORA did not exist.

32. The 1994 act established a confidential database containing information about Michigan sex offenders and was only available to law enforcement agencies.

33. Since the 1994 enactment, it has been amended numerous times and applied retroactively. See 1996 Mich. Pub. Act. 494; 1999 Mich. Pub. Act. 85; 2002 Mich.App. Act. 542; 2004 Mich. Pub. Act. 235, 239, 240; 2005 Mich. Pub. Act. 121, 127, 132; 2006 Mic. Pub. Act. 46; 2011 Mich. Pub. Act. 17, 18, and 2013 Mich. Pub. Act. 149.

34. Plaintiff asserts that none of the Statutes cited in the above paragraph are

8

applicable to him, nor any federal statute or statutes of any other State, district, territory or Indian Country created after his sentencing.

## BACKGROUND SURROUNDING FEDERAL SORNA

35. Most Paragraphs (32-39) in this section are taken directly from the DOJ https://smart.gov/caselaw.htm. SMART-Office of Sex Offender Sentencing, Monitoring, Apprehending, Registering, and Tracking (Appendix 1-8, also see pg 75, 34 U.S.C. §20945).

36. Congress has enacted various measures setting "minimum standards" for States to implement sex offender registration or notification systems.

37. The first of these Acts was passed in 1994 and is commonly referred to as the "Wetterling Act." This Act established a set of minimum standards for registration systems for the states.

38. In 1996, Congress passed "Megan's Law" as a set of minimum standards for community notification.

39. The current set of standards —the Sex Offender Registration and Notification Act (SORNA) — was passed in 2006. (Appendix pg 1, Sex Offender Registration and Notification in the United States: Current Case Law and Issues March 2018, also see Appendix pg 8).

40. The 2006 Act was named Adam Walsh Child Protection and Safety Act.

House and Senate bills H.R. 3132 and S. 1086, also known as the Sex Offender Registration and Notification Act (SORNA) 34 U.S.C. §20901-902 (formerly 42 U.S.C. §16901) (Appendix pg 105, 139 and 58 ).  The original Act directive was the protection of children from pedophiles and has rapidly accelerated into a wholesale dragnet encompassing a host of other offenses.

41.    The 2006 Act replaced the 1994  Jacob Wetterling Act and requires states to adjust and maintain their registrations  in accordance with federal requirements or  risk losing federal funds earmarked for State programs (infra).

42.    The 2006 Act set offenders into three registration tiers:  Tier 3 must update their residence address every three months for life. Tier 2  must update  every six months for 25 years. Tier 1 must update once a year for 15 years. Regardless of Tier, failure to register is a felony under the law.

**Federal Courts**

43.     From 2003 until 2017,  federal courts had nearly universally held that sex offender registration and notification schemes did not violate the ex post facto clause. However, in Doe v. Snyder (supra), the U.S. Sixth Circuit Court of Appeals held that Michigan's SORNA law is punitive and, therefore, could not be applied retroactively. The Supreme Court denied certiorari in the case in October 2017 and is now  binding  for the states in the circuit: Kentucky,

10

Michigan, Ohio and Tennessee.

**United States Supreme Court**

44.    The first real challenge to SORA type statutes was Smith v. Doe, 538 U.S. 84, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003), which challenged Alaska's early version of SORA.  Justice Kennedy delivered the opinion of the Court.

45.    Without any real offer of proof the Smith decision cited and stressed that preventing recidivist activity by offenders was the objective.  The Court in Smith v. Doe, placed reliance on its holding one year earlier in its holding in McKune v. Lile, 536 U.S. 24, 34, 122 S.Ct. 2017, 153 L.Ed.2d 47 (2002).

46.    In a 5-4  plurality decision McKune v. Lile, 536 U.S. 24, 34 (2002) Justice Kennedy writing for the Court wrote and  held  about  recidivism: "such a frightening and high risk of recidivism" among sex offenders, a rate "has been estimated to be as high as 80%."  Justice Kennedy relied on an amicus brief from the United States Department of Justice for the "frightening 80%" stat.

47.    The amicus brief in question referenced: The U.S. Dept. of Justice, Nat. Institute of Corrections, A Practitioner's Guide to Treating the Incarcerated Male Sex Offender xiii (1988).  The Practitioner's guide used as its reference source: Robert E. Freeman-Longo & R. Wall, Changing a Lifetime of Sexual Crime, PSYCHOLOGY TODAY, Mar. 1986).  Appendix pg 15, 54).

11

The findings of the Amicus in question were disproved. (See Ellman, Ira Mark; Ellman, Tara. (2015). ( "Frightening and high": the Supreme Court's crucial mistake about sex crime statistics. University of Minnesota Law School. Retrieved from the University of Minnesota Digital Conservancy. Constitutional Commentary, Volume 30, Issue 3 (Fall 2015) pages 495-508 https://conservancy.umn.edu/handle/11299/188087 Appendix pg 12).

48. Since the amicus was submitted by then U.S. Solicitor General Theodore Olson (without question one of the most accomplished and preeminent attorneys to ever practice before the Supreme Court) the "Frightening and high" "80%" language which came from a DOJ field manual went unchecked, dug in, took root and unfortunately found a home in the lexicon of American jurisprudence[4].

49. The editor of the DOJ field manual Barbara K. Schwartz, has rebuked current policies and use of public registries in a 2010[5] essay titled "No More Victims,"

---

[4] (Appendix pg 26) Briefing the Supreme Court: Promoting Science or Myth? Melissa Hamilton 2022 Emory Law Journal Online [Vol. 67:2021], APPENDIX pg 49 Melissa Hamilton, Constitutional Law and the Role of Scientific Evidence: *The Transformative Potential of Doe v. Snyder.* 58 BC.L.Re.E.Supp34 (2017).

[5] "Having worked in the field of sex offender treatment since 1971, I now feel that I have fallen down the 'the rabbit hole' and am watching the Red Queen scream, 'Off with their head,'" Schwartz wrote. "Is there no end to the

50. The findings in regard to recidivism in  McKune v. Lile and Smith v. Doe were reached in error.

51. 14 yrs after McKune, 13 years after Smith, the decision in Does #1-5 v. Snyder, 834 F3d 696 (6th Cir. 2016) was handed down by the United States Court of Appeals for the Sixth Circuit.

52. As in Smith, the government in Does #1-5 v. Snyder, argued the aim of SORA was to prevent recidivism.

53. In Does #1-5 v. Snyder, as in Smith v. Doe, the government never offered one shred of evidence in regard to recidivism.  In fact by the **"clearest proof"** no government entity has ever conducted one study on the subject.

54. The State of Michigan's current SORA statute is based directly on the Federal Government directives put forth in **34 U.S.C. § 20901**.

55. The cases concerning SORA statutes in Michigan and in other states are neatly book-ended by the holdings of Smith v. Doe, and Packingham, v. North

---

counterproductive response to sex offenders and the problem of sexual assault also Also see ... Joshua Vaughn The Sentinel  Mar 25, 2016 Closer look :  Finding statistics to fit a narrative. If individuals who found inappropriate ways to achieve basic human needs before they committed a sexual assault cannot fulfill their needs after they have offended, is that a setup for reoffending?"
**This link must be cut and pasted**.
Https://cumberlink.com/news/local/closer_look/closer-look-finding-statistics-to-fit -a-narrative/article_7c4cf648-0999-5efc-ae6a-26f4b7b529c2.html

Carolina ___U.S. __ 137 S.Ct. 1730, 198 L.Ed.2d 273 (2017).

56.   Packingham v. North Carolina, dealt with the overreaching, overbreadth internet restrictions of a SORA type statute and its affects on a multitude of 1st Amendment free speech issues.

57.   The State of North Carolina SORA statute noted in Packingham, v. North Carolina ___U.S. __ 137 S.Ct. 1730, 198 L.Ed.2d 273 (2017), is based directly on the Federal Government directives in **34 U.S.C. § 20901**.

58.   In Packingham, v. North Carolina, Justice Kennedy delivered the opinion of the court just as he had in Smith, and McKune.

59.   Justice Kennedy clearly noted that the statue in Packingham (similar in content and application to Michigan's SORA) had the broadest reach of any statute in any case ever to reach the Court in its entire history, holding:

> **"It is instructive that no case or holding of this Court has approved of a statute as broad in its reach." At 1737.**

60.   Just as the U.S. Supreme Court rejected the statute in question in Packingham, the Court also denied cert in Does #1-5 v. Snyder, 834 F3d 696 (6th Cir. 2016).

61.   As noted in Paragraph #10 above the DOJ has acknowledged that the U.S. Supreme Court denial of cert in Does #1-5 v. Snyder, made the holding of Does #1-5 v. Snyder the law of the land in the Sixth Circuit states of Michigan, Ohio,

14

Kentucky and Tennessee.

62. By not respecting the holding of Does #1-5 v. Snyder the State of Michigan defendants have engaged in a reckless pattern of gross indifference, disregard for the truth and have engaged in an official, intentional, systematic policy, custom and pattern of complete disregard for the Constitution of the United States of America.

63. Justice Kennedy correctly observed/noted in Packingham v. North Carolina:

**[T]he troubling fact that the law imposes severe restrictions on persons who already have served their sentence and are no longer subject to the supervision of the criminal justice system is also not an issue before the Court. At 1738.**
See Paragraph 14.

64. The time is clearly ripe to completely strike down **34 U.S.C. § 20901** and its progeny the State of Michigan's SORA (Appendix pg 78, **M.C.L. § 28.721** *et. seq.*, as amended July 1, 2011 (SORA 2011).

## SORA IN MICHIGAN

65. Since Smith v. Doe, Michigan's SORA statute has increasingly added significant restrictions and barriers to re-introduction/integration into society, stunted rehabilitation creating zero realistic probability of any chance of redemption in their lifetime for offenders. Appendix pg 76 overview of changes.

66. The cumulative effect of Michigan's: SORA is a "byzantine code governing in minute detail the lives of the state's sex offenders." Does #1-5 v. Snyder Court held at 697. The same statement applies to SORNA.

67. As the Court in Snyder noted: Michigan's SORA imposes punishment:

> Punishment may never be retroactively imposed or increased. Indeed, the fact that sex offenders are so widely feared and disdained by the general public implicates the core counter-majoritarian principle embodied in the Ex Post Facto clause. at 705

68. As the Founders rightly perceived, as dangerous as it may be not to punish someone, it is far more dangerous to permit the government under the guise of civil regulation to punish people without prior notice . . . The retroactive application of SORA's 2006 and 2011 amendments to Plaintiffs is unconstitutional, and therefore must cease. Snyder, at 705.

69. Any sections of SORNA and Michigan SORA which went into effect after Plaintiff (or any other registrants) underlying sentence and conviction violates the Ex post facto clause of the U.S. Constitution, this includes  2006 and 2011 amendments, (M.C.L. § 28.723, et seq.; Mich. Pub. Acts 121, 127 (2005) (the 2006 amendments); Mich. Pub. Acts. 17, 18 (2011 amendments).

## PAIRING OF FEDERAL SORNA AND MICHIGAN SORA STATUTE SECTIONS/RESTRICTIONS IN QUESTION AFFECTING PLAINTIFF [6]

70.  **34 U.S.C. § 20913**      **Registry requirements for sex offenders.**

   **34 U.S.C. § 20914**      **Information required in registration[7] Travel**

   **M.C.L.    § 28.723**      **Individuals required to be registered**

---

[6]  **Placed here for ease of reference full statutes** Appendix pg 58.
http://uscode.house.gov/browse.xhtml

Title 34 - Crime Control and Law Enforcement
Subtitle II - Protection of Children and Other Persons
CHAPTER 209 - Child Protection and Safety
Subchapter I - Sex Offender Registration and Notification-
effective date: January 12, 2018

http://legislature.mi.gov/doc.aspx?mcl-295-1994-I

http://legislature.mi.gov/doc.aspx?mcl-295-1994-II

http://legislature.mi.gov/doc.aspx?mcl-295-1994-III

[7]
**34 U.S.C. § 20914. Information required in registration**
(a) Provided by the offender The sex offender shall provide the following
information to the appropriate official for inclusion in the sex offender registry:
(1) The name of the sex offender (including any alias used by the individual).
(2) The Social Security number of the sex offender.
(3) The address of each residence at which the sex offender resides or will reside.
(4) The name and address of any place where the sex offender is an employee or will
be an employee.  (5) The name and address of any place where the sex offender is a
student or will be a student.  (6) The license plate number and a description of any
vehicle owned or operated by the sex offender.

17

71.   **34 U.S.C. § 20918**        **Periodic in person verification[8]**

    **M.C.L.    § 28.725a**      Notice to registered individual; explanation duties reporting requirements.

72.   **34 U.S.C. § 20915[9]**      Duration of registration requirement

    **34 U.S.C. § 20917**      Checking system for social networking websites

    **34 U.S.C. § 20927**      Failure of jurisdiction to comply

    **18 U.S.C. § 2050**      Failure to Register (Appendix pg 141)

    **M.C.L.    § 28.725**      Conditions requiring individual to report in person and provide notice to registering authority; release of incarcerated individual; notice; compliance.

73.   **34 U.S.C. § 20916**        Direction of the A.G.-Internet identifiers

    **M.C.L.    § 28.725**

---

[8]

**34 U.S.C. § 20918 Periodic in person verification**
A sex offender shall appear in person, allow the jurisdiction to take a current photograph, and verify the information in each registry in which that offender is required to be registered not less frequently than— (1) each year, if the offender is a tier I sex offender; (2) every 6 months, if the offender is a tier II sex offender; and (3) every 3 months, if the offender is a tier III sex offender. 2006: **M.C.L. § 28.728(2)(l)**

[9]

**34 U.S.C. § 20915 - Duration of registration requirement**
(a) Full registration period . . .
The full registration period is—
(1) 15 years, if the offender is a tier I sex offender;
(2) 25 years, if the offender is a tier II sex offender; and
(3) the life of the offender, if the offender is a tier III sex offender.
**34 U.S.C. § 20916        Direction to the Attorney General**

74.  **34 U.S.C. § 20920**   Public access to sex offender information . . . Internet

75.  **34 U.S.C. § 20921**   National Sex Offender Registry

    **34 U.S.C. § 20922** -   Dru Sjodin National Sex Offender Public Website

    **M.C.L.  § 28.727**   (1)(a, e-j, m) (4-5)

    **M.C.L.  § 28.728**[10]   Law enforcement database; information to be contained for each registered individual; public internet website; compilation; availability; removal.

76.  **M.C.L.  § 28.735**   Registered individual residing in student safety zone prohibited conduct; violation; penalties; exceptions.

77.  **34 U.S.C.  § 20924**   **Actions taken when sex offender fails to comply**
    **M.C.L.  § 28.728a**   Failure to register or update registration information;
    **M.C.L.  § 28.729**   Registration required; violations; penalties.[11]
    **M.C.L.  § 28.724 -**   Registration; procedures. on or before 10- 1- 1995
    **M.C.L.  § 28.734**   Prohibited conduct; violation; penalty; exceptions; other violations; right to vote.

78.  The 3 day rule of 34 U.S.C. § 20913 Registry requirements for sex offenders amounts to a mini parole/probation it is a restraint and an affirmative disability.

To have to go in person to make such changes or face arrest is a constant

---

[10] The public registry website posts extensive personal information about each registrant, including residential address, employer address, date of birth, school information, vehicle information, physical description (weight, height, etc.), and a photograph.

[11] Ranges of 2-10 years of prison time for failure to comply with a complex overbreadth set of restrictions.

reminder for Plaintiff or any registrant they are not free to move about.

79. Michigan's SORA statute requires a registrant to "immediately" notify of changes in address, school, employment. It also requires 21 advance notice for travel plans longer then 7 days.

80. SORNA & SORA address restrictions do not serve a compelling state interest and are not narrowly tailored. The sections are completely overbreadth, a prior restraint, interfering with the Constitutional rights cited infra.

81. At once time Plaintiff was homeless yet still obligated to report an address and maintain a current ID. While searching for housing, the requirements of reporting interfere with the search for the basic human need of shelter, such a restraint is facially invalid and invalid in application

82. Periodic in person verification is a burden and punishment.

83. SORA's safety zones provisions converted SORA from a regulatory scheme into a **punitive** statute. Does #1-5 v. Snyder, 834 F.3d 696, 702-704. (6th Cir. 2016). The same holds true for SORNA.

84. All of the internet reporting requirements and restrictions violate the First Amendment on multiple levels and have cost Plaintiff work opportunities.

85. The websites and personal information made public is a continuing source of scorn, humiliation and only serves as another from of continuing punishment.

20

86. Publishing detailed information about registrants on the internet is an invasion of privacy, it interferes with employment, housing and personal relationships (freedom of association) causing a chilling effect by being isolated and banished to the fringes of society.

87. The statute sections cited supra violate Article 1 § 9, Article 1 §10 Ex post facto clause , 1st Amendment- privacy- freedom of association, 5th Amendment double jeopardy--multiple punishment, 4th Amendment seizure, 5th and 14th Amendment, Privileges Immunities Clauses, 8th Amendment, Cruel and unusual punishment, the 14th amendment due process and equal protection clauses. Article IV, § 2, Clause 2 Comity and Article VI, Sec 2 Supremacy.

## <u>FEDERAL SORNA STATUTE IS UNCONSTITUTIONAL</u>

88. Via the Sex Offender Registration and Notification Act (SORNA), 34 U.S.C. §20901: If any State in the United States does not the maintain a sex offender data base based on the criteria set forth in the Act that state or states shall have a 10 % reduction in federal law enforcement funding. Appendix pg 72 every state "shall maintain"[12] **34 U.S.C. § 20927. Failure of jurisdiction to comply**–

---

[12]

**34 U.S.C. § 20912** - **Registry requirements for jurisdictions**
(a) Jurisdiction to maintain a registry Each jurisdiction **shall maintain** a jurisdiction-wide sex offender registry conforming to the requirements of this subchapter.

21

(a), (b)(4)[13].

89. Because the restrictions noted in paragraph #86 are made mandatory. The originating source of Constitutional violations cited supra/infra stems from 34 U.S.C. § 20901 the statute must be stricken in its entirety.

90. The original intent behind SORNA, SORA and SORA type statutes had a clear intent to create a database to protect children from sexual predators, the act was even called the Child Protection Act.

91. The statutes in question have exceeded their original clear mandate Pennsylvania Dept of Corrections, v. Yeskey, 524 U.S. 206,118 S.Ct 1952, 141 L.Ed. 2d 215 (1998). The database should only be accessible to law enforcement.

---

(b) Guidelines and regulations The Attorney General shall issue guidelines and regulations to interpret and implement this subchapter.

[13]
**34 U.S.C. § 20927. Failure of jurisdiction to comply**
**(a)** In general
For any fiscal year after the end of the period for implementation, a jurisdiction that fails, as determined by the Attorney General, to substantially implement this subchapter shall not receive **10** percent of the funds that would otherwise be allocated for that fiscal year to the jurisdiction...
**(b)(4)** Funding reduction

## STRICT SCRUTINY
## STANDARD OF REVIEW

92.  Several fundamental rights within this complaint are " implicit in the concept of ordered liberty.'" Doe v. Mich. Dep't of State Police, 490 F.3d 491, 500 (6th Cir. 2007)(Reno v. Flores, 507 U.S. 292, 302, 113 S.Ct. 1439, 123 (1993).

93.  The restrictions (infra and supra) imposed on registrants are the most sweeping obstacle to the rights of an accused or convicted individual since, Gideon v. Wainwright, 372 U.S. 335, 339, 83 S.Ct. 792,, 9 L.Ed.2d 799 (1963).

94.  When criminal penalties are at stake, as they are in the present case, a relatively strict test is warranted. Springfield Armory, Inc. v. City of Columbus, 29 F.3d 250, 253 (6th Cir. 1994).

95.  SORNA, SORA and SORA type statutes do not pass strict scrutiny, and are not narrowly tailored to meet a compelling state interest, they offend traditional notions of fair play and substantial justice.

96.  "Government actions that burden the exercise of . . .fundamental rights or liberty interests are subject to strict scrutiny, and will be upheld only when they are narrowly tailored to a compelling governmental interest." United States v. Brandon, 158 F.3d 947, 956 (6th Cir. 1998). Blau v. Fort Thomas , 401 F.3d 381, 393 (6th Cir. 2005).

97. "Legislation that infringes on a fundamental right is reviewed under the strict-scrutiny test and will be invalidated unless it is narrowly tailored to serve a compelling state interest." Reno v. Flores, 507 U.S. 292, 302, (1993).

98. SORNA, SORA and SORA type statutes infringe on not just one but several fundamental Liberty rights, textually committed or secured within the Bill of Rights, the 14th Amendment and the main body of the U.S. Constitution.

99. Under the guise of civil statutes (Michigan's SORA is actually embedded in the criminal code) the infringements level criminal sanctions for activities that are otherwise legal.

100. A law which punished conduct which would not be blameworthy in the average member of the community would be too severe for that community to bear. Lambert v. California, 355 U.S. 225, 230 78 S.Ct. 240,, 2 L.Ed.2d 228 (1957).

101. The Statutes in question **create a criminal prohibition of sweeping and alarming breadth** in the First Amendment context alone and should be invalidated as overbroad as a substantial number of its applications are clearly unconstitutional. United States v. Stevens, 559 U.S. 460, 130 S.Ct. 1577, 176 L.Ed.2d 435(2010)

102. Justice Kennedy clearly noted that the statue in Packingham, v. North Carolina ___U.S. __ 137 S.Ct. 1730, 198 L.Ed.2d 273, (2017) (similar in content and

24

application as Michigan's SORA & SORA type statutes) had the broadest reach of any case ever to reach the court in its entire history, holding:

> "It is instructive that no case or holding of this Court has approved of a statute as broad in its reach." At 1737.

103. The Statute in Packingham, was invalidated in a 9-0 decision.

104. As Chief Justice Roberts noted (8-1 decision) the Supreme Court: will not uphold an unconstitutional statute merely because the Government promises to use it responsibly. Nor can the Court construe statutory language to avoid constitutional doubt. United States v. Stevens, 559 U.S. 460, 463, 130 S.Ct. 1577, 176 L.Ed.2d 435 (2010).

## COUNT I

### SORNA, SORA & SORA TYPE STATUTES VIOLATE THE EX POST FACTO CLAUSE OF THE UNITED STATES CONSTITUTION

105. Plaintiff incorporates all preceding and subsequent paragraphs by reference.

106. The Federal SORNA and Michigan SORA statutes sections cited supra violate Article 1 § 9, Article 1 §10 Ex post facto clause of the United States Constitution.

107. The Ex post facto clause prohibits laws that "retroactively alter the definition

25

of crimes or increase the punishment for criminal acts" <u>Collins</u> v. <u>Youngblood</u>, 497 U.S. 37, 41, 43, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990).   Also see Beazell v. Ohio, 46 S.Ct. 68, 269 U.S. 167, 70 L.Ed. 216 (1925).

108.   If a statute reaches back and creates new burdens, new duties, new obligations, or new liabilities not existing at the time the statute becomes effective it is an Ex post facto law affecting substantive rights and must be invalidated.

109.   The mark of an ex post facto law is the imposition of what can fairly be designated punishment  for past acts.  <u>DeVeau</u> v. <u>Braisted</u>, 363 U.S. 144, 160, 80 S.Ct. 1146, 4 L.Ed.2d 1109 (1960).

110.   Subtle ex post facto violations are no more permissible than overt ones.  <u>Collins</u> v. <u>Youngblood</u>, 497 U.S. 37, 41, 43, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990). Also see <u>Gibson</u> v. <u>Mississippi</u>, 162 U.S. 565, 590 (1896), <u>Beazell</u> v. <u>Ohio</u>, 269 U.S. 167, 46 S.Ct. 68, 70 L.Ed. 216 (1925).

111.   After a defendant has once fully atoned for their offense, a statute imposing an additional penalty is one simply increasing the punishment for the offense, and is ex post facto.  <u>Hawker</u> v. <u>New York</u>, 170 U.S. 189, 191, 18 S.Ct. 573, 42 L.Ed. 1002 (1898).

112.   For a criminal or penal law to be ex post facto, it must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage

26

the offender affected by it.  **It need not impair a "vested right."** <u>Weaver</u> v.

<u>Graham</u>, 450 U.S. 24, 30, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981)

**<u>Calder and Its Progeny</u>**

113.   Justice Chase's opinion in <u>Calder</u> v. <u>Bull</u>, 3 U.S. 386 1 L.Ed. 648, (1798), is

commonly cited as the original primary source of case law in regard to the Ex

post facto clause.

114.   Justice Chase's opinion in <u>Calder</u> set forth a four factor test:

1.   Every law that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action.

2.   Every law that aggravates a crime, makes it greater than it was, when committed.

3.   Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed.

4.   Every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offence, in order to convict the offender.[14]

---

[14]

Justice Ginsburg, noted in dissent in: <u>Carmell</u> v. <u>Texas</u>, 529 U.S. 513, 567, 120 S.Ct. 1620, 146 L.Ed.2d 577 (2000):
As an initial matter, it is instructive to note that Justice Chase's opinion in Calder was written in the period in which each Justice gave his opinion seriatim. Thus, it is not a Supreme Court holding that would be included in the definition of "clearly established Federal law." Justice Chase's opinion has historical significance solely because his four categories have been viewed "as an authoritative gloss on the Ex Post

115. <u>Calder,</u> factors 2 and 3 of are present in the case at hand.

116. The main decisive consideration under <u>Calder,</u> is whether an Ex post facto law is applied to a civil statute (currently allowable) or is applied to enhance criminal punishment or has a punitive effect regardless of legislative intent.

117. The holding of <u>Smith</u> v. <u>Doe</u>, 538 U.S. 84 123 S.Ct. 1140,, 155 L.Ed.2d 164 (2003) held that a plaintiff must prove that a SORA type statute is punitive by the "clearest evidence."

118. In 2017 SORNA was relocated from THE PUBLIC HEALTH AND WELFARE, CHAPTER 151 - CHILD PROTECTION AND SAFETY) under Title 42, to **criminal** Title 34 CRIME CONTROL AND LAW ENFORCEMENT-CHAPTER 209 - CHILD PROTECTION AND SAFETY. **(Old-42 U.S.C. § 16901– New 34 U.S.C. § 20901**).

119. **The 2017 moving of SORNA from the Civil code to the Criminal code shows by the clearest proof the statute is not civil and is punitive.**

120. The State of Michigan registration act is also located with the criminal code of the State of Michigan statutes.

---

Facto Clause's reach" by more recent Supreme Court decisions.

121. Plaintiff is seeking to enforce on point Stare Decisis. In Does #1-5 v. Snyder, 34 F3d 696 (6th Cir. 2016) Michigan's SORA was found to be punitive by the "clearest proof" (certiorari was denied), yet the State of Michigan has knowingly and willfully taken zero steps to accept this binding Stare Decisis precedent.

122. Even if a statute merely alters penal provisions accorded by the grace of the legislature, **it violates the Clause if it is both retrospective and more onerous than the law in effect** (SORNA and SORA both make the prohibited alterations). Weaver v. Graham, 450 U.S. 24(1981).

123. In regard to the Ex post facto clause: The critical question is whether the law changes the legal consequences of acts completed before its effective date. Weaver, at 32. SORNA and SORA both change legal consequences.

124. A Ex post facto clause inquiry looks to the challenged provision, and not to any special circumstances that may mitigate its effect on the particular individual. Weaver, at 33. Also see Cummings v. Missouri, 71 U.S. (4 Wall.) 277, 325-26, 18 L.Ed. 356 (1866).

125. Even if the statutes in question were deemed civil (SORNA and SORA are not) they still violate the Ex post facto clause as Justice Thomas noted: Justice Thomas in concurrence:

29

[T]he **Ex Post Facto Clause of the Constitution, Art. I, § 9, cl. 3, even more clearly reflects the principle that "[r]etrospective laws are, indeed, generally unjust."** 2 J. Story, Commentaries on the Constitution § 1398, p. 272 (5th ed.1891). Since Calder v. Bull, 3 Dall. 386 (1798), however, this Court has considered the Ex Post Facto Clause to apply only in the criminal context. I have never been convinced of the soundness of this limitation. Eastern Enterprises v. APFEL, 524 U.S. 498, 538, 118 S.Ct. 2131,141 L.Ed.2d 451 (1998).

**Kennedy v. Mendoza-Martinez**
**Affirmative Disability or Restraint**

126. Smith v. Doe, 538 U.S. 84 (2003) applied a seven (7) factors test set borrowed from the double jeopardy set forth in Kennedy v. Mendoza-Martinez, 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963).

127. The Kennedy v. Mendoza-Martinez factors are:

(1) " [w]hether the sanction involves an affirmative disability or restraint" ;

(2) " whether it has historically been regarded as a punishment" ;

(3) " whether it comes into play only on a finding of scienter" ;

(4) " whether its operation will promote the traditional aims of punishment— retribution and deterrence" ;

(5) " whether the behavior to which it applies is already a crime"

(6) " whether an alternative purpose to which it may rationally be connected is assignable for it" ; and

(7) " whether it appears excessive in relation to the alternative purpose

30

assigned."

128. Under Kennedy v. Mendoza-Martinez, if the legislative body intended to punish the inquiry ends and the statute is invalidated.

129. When applying Kennedy v. Mendoza-Martinez not all factors have to be applicable. Absent an affirmative legislative intent to punish the Mendoza-Martinez factors ultimately direct a court to see if the statute in question in fact subjects the plaintiff to an affirmative disability or restraint (intent-effects test) and to prove such by the "clearest proof".

130. That SORNA & SORA apply only to behavior that is already a crime supports the conclusion that Kennedy v. Mendoza-Martinez factor #5 has a punitive aim and effect.

131. The above is supported by the fact that SORA in Michigan is found in the State criminal statutes.

132. Ultimate control and punishment authority over SORNA application lies with the Attorney General of the United States. 34 USC § 20912(b) 34 USC § 20912.

133. When Plaintiff was sentenced SORNA and SORA did not exist.

134. SORNA and SORA in effect created a caste system in the United States without any meaningful chance at redemption for those placed on the lists.

135. The punishment of registration essentially holds any registered offender subject

31

to a ""**continuing seizure"** (Ginsburg concurring,  Albright v. Oliver, 510 U.S. 266, 277-81,   114 S.Ct. 807, 127 L.Ed.2d 114, (1994) (with zero hope of societal integration.

136.   Even if an offender is taken off the list 25 yrs after the end of their sentence, SORNA and SORA effectively deny any true chance of redemption,  or reintroduction into society in any meaningful way.

137.   Under SORNA and SORA all doors are essentially shut, all paths blocked, all registrants left out in the open for all to see without any prospect of shelter. No other group faces this level of scrutiny.

**Falling under its Own Weight**
**Multiple Jurisdictions**
**Striking down Sorna Type Statutes**

138.   Besides the U.S. Supreme Court decision in Packingham, v. North Carolina   _ _U.S. __ (2017)137 S.Ct.  1730, 198 L.Ed.2d 273, 85  (2017) the U.S. Sixth Circuit Court of Appeals and several State Supreme Courts have also struck down SORA type statutes and provisions due to their punitive nature and application. AK, NH, OH, OK, ME, KY, PA: Doe v. State, 189 P.3d 999 (2008) Supreme Court of Alaska, Doe v. State,  167 N.H. 382, 111 A.3d 1077 (2015) Supreme Court of New Hampshire, State v. Williams, 129 Ohio St.3d 344, 2011 Ohio 3374, 952 N.E.2d 1108, 1113 (Ohio 2011). Starkey v Oklahoma Dep't of

32

Corrections, 2013 OK 43, 49; 305 P.3d 1004 (2013). State v Letalien, 985 A.2d 4, ME 130, 985 A (2009). Plea deal case Commonwealth v. Martinez, 147 A3d 517, 532-33 (Pa, 2016) ex post facto Commonwealth v. Muniz, --- A.3d ---; 2017 WL 3173066 (Pa, July 19, 2017)

139.   As noted supra Justice Kennedy wrote for the majority in Smith v. Doe (2003). The reasoning in Smith was based on an unproven (to this day) fear of recidivism: "such a frightening and high risk of recidivism".

140.   In 2017, 14 years after Smith, Justice Kennedy wrote not just for the  majority but for a unanimous Court in Packingham, v. North Carolina ___U.S. __ 137 S.Ct. 1730, 198 L.Ed.2d 273, (2017).   The Court noted that the statue in Packingham (similar in content and application as Michigan's SORA) had the broadest reach of any case ever to reach the court in its entire history, holding:

> **"It is instructive that no case or holding of this Court has approved of a statute as broad in its reach." At 1737.**

141.   The decision in Packingham, came nine (9) years after the Alaska Supreme Court struck down their SORA type statue (ASORA) in  Doe v. State, 189 P.3d 999 (2008) Supreme Court of Alaska.  Alaska was the State Smith v. Doe, 538 U.S. 84, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003) originated.

142.   In striking down Alaska's ASORA the Doe v. State court noted: . . . is the intent

33

to rehabilitation, integration, assimilation or is the intent perpetual retribution, so never ending and expanding that it will collapse under its own weight.

143. As Justice Kennedy observed/noted in Packingham v. North Carolina:

> **[T]he troubling fact that the law imposes severe restrictions on persons who already have served their sentence and are no longer subject to the supervision of the criminal justice system is also not an issue before the Court.** At 1738.

144. Had the issues noted above and infra been before the Packingham Court it is clear such restrictions would have been invalidated.

145. The restrictions noted by Justice Kennedy are present in this matter and are ripe to be held invalid under the Constitution of the United States.

146. Justice Stevens dissent in Smith v. Doe, 538 U.S. 84, (2003) has been proven correct:

No matter how often the Court may repeat and manipulate multifactor tests that have been applied in wholly dissimilar cases involving only one or two of these three aspects of these statutory sanctions, it will never persuade me that the registration and reporting obligations that are imposed on convicted sex offenders and on no one else as a result of their convictions are not part of their punishment. In my opinion, a sanction that (1) is imposed on everyone who commits a criminal offense, (2) is not imposed on anyone else, and (3) severely impairs a person's liberty is punishment. . . . It is therefore clear to me that the Constitution prohibits the addition of these sanctions to the punishment of persons who were tried and convicted before the legislation was enacted. At 113.

34

147.  The application of SORNA & SORA to plaintiff is Unconstitutional in any context his 1993 conviction and sentencing predates the creation of the statutes in question. Burgess v. Salmon, 97 U.S. 381, 24 L.Ed. 1104 (1878).

148.  The requirement that **any** version of SORNA, SORA or SORA type statute of another state can apply to anyone convicted before the creation of **any** of those statutes violates the Ex post facto clause of the United States Constitution and must be held invalidated.

**Framers' intent**
**Ex Post Facto Clause Protection of**
**Individual Rights in an Unpopular Group**

149.  The requirement that SORNA & SORA or any such statute of any State, district, territory or Indian Country of the Union can apply to anyone convicted before the creation of those statutes violates the Ex post facto clause of the U.S. Constitution and must be invalidated.  It does not matter that any such individual belongs to such a unpopular and disdained group.

150.  The United States does not practice Parliamentary sovereignty. "The constitutional inhibition of ex post facto laws was intended to secure substantial personal rights against arbitrary and oppressive legislative action."  Malloy v. South Carolina, 237 U.S. 180, 183, 35 S.Ct. 507, 59 L.Ed. 905 (1915)**.**

151.   Belonging to an unpopular[15] group does not equate to a waiver of Constitutional rights or provision.

152.   [T]he Ex Post Facto Clause not only ensures that individuals have "fair warning about the effect of criminal statutes, but also restricts governmental power by restraining arbitrary and potentially vindictive legislation. Weaver v. Graham, 450 U.S. 24, 28-29, (1981).

That the framers of the Federal Constitution chose to include a prohibition on ex post facto laws in the body of the Constitution itself suggests the high degree of importance they attached to it **to protect individual liberty**. Collins v. Youngblood, 497 U.S. 37, 110 S.Ct. 2715 111 L.Ed.2d 30 (1990).

Wherefore Plaintiff requests that any version of SORNA & SORA or any such version of a statute of any State, district, territory or Indian country of the Union cannot be applied to anyone convicted before the creation of those statutes, since such statutes infringe on textually committed protections, and rights and are repugnant to the intent of the Framers and violate the Ex post facto clause of the U.S. Constitution.

---

[15]

Fletcher v. Peck, 10 U.S. (6 Cranch) 87, 137-38, 3 L.Ed. 162 (1810):
Whatever respect might have been felt for the state sovereignties, it is not to be disguised that the framers of the constitution viewed, with some apprehension, the violent acts which might grow out of the feelings of the moment; and that the people of the United States, in adopting that instrument, have manifested a determination to shield themselves and their property from the effects of those sudden and strong passions to which men are exposed. The restrictions on the legislative power of the states are obviously founded in this sentiment.

36

## COUNT II

### SORNA, SORA & SORA TYPE STATUTES
### VIOLATE
### THE 5th AMENDMENT DOUBLE JEOPARDY CLAUSE OF
### THE UNITED STATES CONSTITUTION

153.  Plaintiff incorporates all preceding and subsequent paragraphs by reference.

154.  Under the 5th Amendment, clause 2 to the United States Constitution: nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb.

155.  Multi layer offender registration under SORNA & SORA and other States of the Union's SORA type statutes set registrants up for the loss of liberty via a lifetime of jumping through hoops due to various restraints and disabilities.

156.  SORNA, SORA and SORA type statutes are vague and overbreadth and failure to perfectly comply subjects registrants to a loss of their liberty interest. **34 U.S.C. § 20913. Registry requirements** (e) & **MCL 28.729** Ranges of 2-10 years of prison time for failure to comply with a complex overbreadth M.C.L. 28.734(2)(a) set of restrictions. M.C.L. 28.735(2)(a).

157.  To expect registrants traveling from state to state to know the compliance requirements of each State of the Union is impossible thus subjecting them to an ever looming threat of a loss of liberty for something for which they have

already atoned.

158. If registrants are not changing their domicile there is no compelling or even legitimate reason to have to report their presence in another state. **18 U.S.C. § 2050** Failure to Register (Appendix pg 141).

159. As cited supra Federal SORNA and Michigan's SORA are both located within criminal code. They both impose criminal sanctions.

160. All registration is based on a prior offense. Any arrest or conviction resulting from any registration failure is an offense of a lesser charge based on the original set of facts leading to placement on the list in the first place infra.

**Elements of Separate Offenses**

161. Any charges stemming from failures in registration are criminal not civil and have to be proven beyond a reasonable doubt.

162. The standard for judging violations of double jeopardy was set forth in Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).

163. The 14th Amendment made the double jeopardy clause applicable to the states via Benton v. Maryland, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), which overruled Palko v. Connecticut, 302 U.S. 319 58 S.Ct. 149, 82 L.Ed. 288 (1937). Also see Ashe v. Swenson, 397 U.S. 436, 469, (1970) upholding Benton. Also see Ball v. United States, 163 U.S. 662, (1896).

38

**Blockburger**
**Criminal Context**

164. Where the same act or transaction constitutes a violation of two distinct statutory provisions, **the test** to be applied to determine whether there are two offenses or only one, is whether <u>each</u> provision requires proof of a fact which the other does not.  <u>Blockburger</u> at 304.

165. Under the <u>Blockburger</u> test only the second act registration  has additional facts. Registration violations are invalid as they are in fact cases of double jeopardy. The use of the word <u>each</u> is the distinguishing factor.

166. The test is not whether the defendant has already been tried for the same act, but whether he has twice been put in jeopardy for the same offence**.**

167. A single act may be an offence against two statutes; and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other. <u>Morey</u> v. <u>Commonwealth</u>, 108 Mass. 433 (1871) cited by <u>Blockburger</u> at 304. Also see <u>Gavieres</u> v. <u>United States</u>, 31 S.Ct. 421, 423, 220 U.S. 338, 55 L.Ed. 489 (1911.

168. For double jeopardy to attach each of the offenses created requires proof of a different element. It is impossible for the first offense (the act which led to

registration) to ever have a separate element from the second (a registration violation). The first act is the basis for the second.

169. Because facts from the first offense (the act which led to registration) may not have to be re-stated in a subsequent information clearly shows registering is wholly dependant on the same set of operative facts (as the original act) in addition to its own facts. The majority of elements in the second offense (registration violation) are contained within the original offense they are shared, yet the same cannot be said of the first offense, which runs directly contrary to Blockburger and violates the double jeopardy clause of the 5th Amendment to the United States Constitution.

170. Registration under SORNA, SORA and SORA type statutes gives law enforcement the opportunity to perpetually subject registrants to repeated attempts of conviction for charges for which they have already atoned.

171. Registration allows:

The State with all its resources and power . . . to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity. Crist v. Bretz, 437 U.S. 28, 35, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978) citing Green, v. United States 355 U.S. 184, 187-88, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957).

172. The Constitution does not permit a legislature to "set a net large enough to catch

all possible offenders." <u>Chicago</u> v. <u>Morales</u>, 527 U.S. 41, 60, 119 S.Ct. 1849,144 L.Ed.2d 67, (1999).

**<u>Double Jeopardy</u>**
**<u>Civil Statute Criminal Punishment</u>**

173. There is no question that SORNA, SORA and SORA type statutes subject registrants to criminal penalties, such statutes are punitive.

174. It has been established that civil statutes can be found to be punitive in nature and in violation of the 5th Amendment, clause 2 double jeopardy.

175. Registering is more then just a sanction. The question for decision is whether the penalty imposes a criminal sanction, thus **"punishing twice, or attempting a second time to punish criminally, for the same offense."** <u>United States</u>, v. <u>One Assortment of 89 Firearms</u>, 465 U.S. 354, (1984). <u>Helvering</u> v. <u>Mitchell</u>, 303 U.S. 391, 399 (1938).

176. The statutory schemes behind SORNA, SORA and SORA type statutes is so punitive in purpose and/or effect that the intention of Congress is negated. <u>United States</u> v. <u>One Assortment of 89 Firearms</u>, at 365.

177. Even if Federal and State legislatures have indicated the intention that SORNA, SORA and SORA type statutes establish a civil penalty, the inquiry is whether the statutory scheme was so punitive either in purpose or effect, as to

41

"transfor[m] what was clearly intended as a civil remedy into a criminal penalty." Hudson v. United States, 522 U.S. 93, 99 (1997).

178. In looking at whether a statutory scheme is so punitive in purpose or effect the focus is on the seven (7) factors Kennedy v. Mendoza-Martinez, 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963)[16].

179. Kennedy v. Mendoza-Martinez emphasized that no one factor should be considered controlling. Hudson v. United States, 522 U.S. 93, 101(1997).

**Kennedy v. Mendoza-Martinez**
**Factors Double Jeopardy**

180. (1) "[w]hether the sanction involves an affirmative disability or restraint"- for all of the reasoning cited above and below significant restraints and disabilities are placed on registrants such as plaintiff.

181. (2) "whether it has historically been regarded as a punishment." Being labeled an outcast, forced to have their home addresses on the internet for the whole world to see truly offers next to zero chance for full reintegration into society

---

[16]

As was set forth in Hudson, announcing a return to the holding in United States v. Ward, 448 U.S. 242, 100 S.Ct. 2636, 65 L.Ed.2d 742 (1980). (Overturning the overwhelmingly disproportionate standard in a civil context set forth in United States v. Halper, 490 U.S. 435,450 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989).

182.   (3) "whether it comes into play only on a finding of scienter";

183.   (4) "whether its operation will promote the traditional aims of punishment—retribution and deterrence"; The effects of the statutes in question are punishment and retribution subjecting registrants in effect to life-long exile and loss of privileges and immunities, infra.

184.   (5) "whether the behavior to which it applies is already a crime" The statute has made a host of ordinary activities criminal for this one group.

185.   (6) "whether an alternative purpose to which it may rationally be connected is assignable for it"; Only if the database goes back to a law-enforcement only database with no further 1st Amendment Violations.

186.   (7) and "whether it appears excessive in relation to the alternative purpose assigned."  Clearly excessive, it is "THE" controlling aspect of all life matters for registrants, impacting travel, housing, Free Speech, access to information, and Privacy interest.  Excessive in regard that it is so vague and overbreadth that even experienced attorneys struggle to decipher the sections of SORNA, SORA and SORA type statutes.

Wherefore Plaintiff asserts SORNA and SORA or any such version of a statute of any State of the Union violates the 5th Amendment, clause 2 double jeopardy . Such statutes infringe on textually committed protections and rights and are repugnant to

43

the intent of the Framers of the Constitution of the United States of America and should be ruled null and void to plaintiff and all registrants.

## COUNT III

### SORNA, SORA & SORA TYPE STATUTES VIOLATE THE 8th AMENDMENT OF THE UNITED STATES CONSTITUTION

187. Plaintiff incorporates all preceding and subsequent paragraphs by reference.

188. The 8th Amendment is applicable on the states via the 14th Amendment, Robinson v. California, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962).

189. SORNA, SORA and SORA type statutes violate the 8th Amendment ban on cruel and unusual punishment.

190. The 8th Amendment to the United States Constitution states: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

191. At its heart, the prohibition against cruel and unusual punishment is the "precept of justice that punishment for crime should be graduated and proportioned to [the] offense." Weems v United States, 217 US 349, 367; 30 S.Ct 544, 54 L Ed 793 (1910).

192. SORNA, SORA and SORA type statutes compel registrants to live in a

continuing state of anxiety and insecurity which no other disfavored group in this Nation is compelled to experience.

193. Registrants live the remainder of their lives with a perpetual limitation of their liberty because as cited supra Federal SORNA and Michigan's SORA are both located within criminal code. They both impose criminal sanctions.

194. Registrants are: forever kept under the shadow of their crime.

195. Registrants are: forever kept within voice and view of the criminal magistrate. not being able to change domicile without giving notice to the "authority" almost immediately in charge of their surveillance.

196. Registrants may not seek, even in other scenes and among other people, to retrieve their fall from rectitude.

197. Registrants are subject to tormenting regulations that, if not so tangible as iron bars and stone walls, oppress as much by their continuity, and deprive of essential liberty.

198. No circumstance of degradation is omitted for Registrants.

199. Registrants must bear a chain night and day.

200. With minimal changes Paragraphs 190-195 were stated over 108 yrs ago in Weems at 367.

201. Clearly the restrictions (infra and supra) imposed on registrants are the most

45

sweeping obstacle to the rights of an accused or convicted individual since, Gideon v. Wainwright, 372 U.S. 335, 339,(1963) and are indeed poof **"shocking to the universal sense of justice"** under any circumstance.

202. The "proper scope" of a constitutional provision "must ultimately be sought by attempting to discern the reasons for its inclusion in the Constitution, and the evils it was designed to eliminate." United States v Brown, 381 US 437, 442; 85 S Ct 1707; 14 L Ed 2d 484 (1965).  This includes arbitrary punishment under the 8th Amendment.

203. Degrading punishment is cruel and usual punishment. The "essential predicate" is "that a punishment must not by its severity be degrading to human dignity." Furman v. Georgia, 408 U.S. 238, 271, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972).

204.  [A] punishment may be degrading simply by reason of its enormity. Furman at 273.

205. Registrants cannot become invisible their home addresses are listed permanently and it frequently it costs them housing opportunities including staying with extended family.

206. Family members suffer for housing a registrant.  And  in most cases family is the best if not the only option.

207. Images of registrants are permanently placed on the internet.

208. Registrants are barred from free travel. If registrants are not changing their domicile there is no compelling or legitimate reason for them to have to report their presence in another state.

209. From state to state there are so many burdensome barriers that there is no legitimate way registrants can know all regulations and **18 U.S.C. § 2050.**

210. Research[17] analyzing data from 15 states, including Michigan, found that public registration may actually **increase** recidivism.

211. In fact "Michigan has never analyzed recidivism rates despite having the data to do so."Does #1-5 v. Snyder, 834 F.3d 696, 705 (6th Cir. 2016) or conducted any empirical studies at 704.

212. Registration is not an "accessory" it is a continuing restraint of liberty, even after completion of a sentence and/or parole or probation.

213. Registration is significantly more burdensome then parole.

214. Because registry notification schemes can increase recidivism, they are not rationally related to public safety.

---

[17] See Prescott & Rockoff, *Do Sex Offender Registration and Notification Laws Affect Criminal Behavior?*, 54 J L & Econ 161 (2011). That public registration undermines SORA's intended goals – while counterintuitive – likely reflects the severe "social and financial costs associated with the public release of registrants'] criminal history and personal information." https://www.nber.org/papers/w13803

215. Registration is excessive in relation to non-punitive interests, it is more then an excessive fine it is in effect life-long parole.

216. The registrations sections complained of violate the 8TH Amendment. The restrictions are cruel and unusual, no other group faces such restrictions.

217. Registration and publication of information is not mandated of those 1. not entitled to own fire arms Johnson v. United States, __ U.S. __, 135 S.Ct. 2551 192 L.Ed.2d 569, (2015) 2. On the no-fly list, 3. Drunk drivers, 4. Stock brokers and bankers who criminally caused the 2007 financial crash. 5. Owners of animal cruelty videos United States v. Stevens, 559 U.S. 460, 463, 130 S.Ct. 1577, 176 L.Ed.2d 435(2010).

The Court ultimately must determine in "its own independent judgment whether the punishment in question violates the Constitution." Graham v. Florida, 560 US 48, 61, 130 S.Ct 2011, 2021; 176 LEd2d 825 (2010).

Wherefore Plaintiff asserts SORNA & SORA or any such version of a statute of any State of the Union violates the 8th Amendment, cruel and unusual punishment clause.

The statutes infringe on textually committed protections, and rights and are repugnant to the intent of the Framers and of the Constitution of the United States of America and should be ruled null and void to plaintiff and all registrants.

48

## COUNT IV

## SORNA, SORA
## & SORA TYPE STATUTES
## VIOLATE THE 1st AMENDMENT OF
## THE UNITED STATES CONSTITUTION

218. Plaintiff incorporates all preceding and subsequent paragraphs by reference.

219. The public registry websites created by SORNA, SORA and SORA type statutes posts extensive personal information about each registrant, including residential address, employer address, date of birth, school information, vehicle information, physical description (weight, height, etc.), and a photograph.[18]

220. All of the above are an invasion of privacy faced by no other group in America. There are no public lists for those banned from owning firearms, placed on the no fly list, drunk drivers, perpetrators of domestic violence, the stock brokers and bankers behind 2007 financial crisis etc...

---

[18]

34 U.S.C. § 20916, Direction to the Attorney General,

34 U.S.C. § 20914 Information required in registration & :
M.C.L. § 28.728(2)
34 U.S.C. § 20920 Public access to information through the Internet,
34 U.S.C. § 20921 National Sex Offender Registry ,
34 U.S.C. § 20922 - Dru Sjodin National Sex Offender Public Website

49

221. The mandatory reporting restrictions coupled with the public dissemination of so much personal information, essentially denies any registrant the opportunity to be let alone.

222. The vast majority of restrictions associated with SORNA, SORA and SORA type statutes are connected to the public dissemination of information and reporting requirements. Federal SORNA and Michigan's SORA are both located within criminal[19] code. They both impose criminal sanctions.

**Invasion of Privacy the Right**
**To Be Let Alone -Stanley**

223. Our law has long recognized that the home provides a kind of special sanctuary in modern life.

224. Consequently, we have long accorded special deference to the privacy of the home, whether a humble cottage or a magnificent manse. This veneration of the domestic harkens back to the common law. William Blackstone recognized a "right of habitation." Mcdonald, v. City of Chicago,  561 U.S. 742, 886, 130 S.Ct. 3020, 177 L.Ed.2d 894, (2010).

225. The **"implied "right to privacy"** was established in the 9-0 decision of

---

[19]

34 U.S.C. § 20917 Checking system social  websites.
M.C.L. § 28.727(1)(I),Internet restrictions- 1st Amendment free  speech

Stanley v. Georgia, 394 U.S. 557 (1969).

226. The makers of our Constitution undertook to secure conditions favorable to the pursuit of happiness and recognized, everyone's house is their safest refuge "Every man's home is his castle." The public posting of personal information via the statutes supra, perpetually invades any registrants home and mind.

227. The Framers knew that only a part of the pain, pleasure and satisfactions of life are to be found in material things. They sought to protect Americans in their beliefs, their thoughts, their emotions and their sensations.

228. The Framers conferred, as against the Government **the right to be let alone** the most comprehensive of rights and the right most valued by civilized man.

229. The Constitution protects the right to receive information and ideas, regardless of their social worth, and to be generally free from governmental intrusions into one's privacy and control of one's thoughts.

230. Federal and State governments have no business telling a man, sitting alone in his own house, what books he may read or what films he may watch, **this includes internet websites and social media**.

231. Our whole constitutional heritage rebels at the thought of giving government the power to control men's minds and ability to communicate with others.

232. Whatever the power of the state to control public dissemination of ideas

inimical to the public morality, it cannot constitutionally premise legislation on the desirability of controlling a person's private thoughts or rights of travel, infra.

**Privacy Internet Identifiers**
**Social Media Restrictions**

233. "[T]he Constitution protects the right to receive information and ideas"; <u>United States</u> v. <u>American Library Association,</u> 539 U.S. 194, 217 (2003).  <u>Reno</u> v. <u>American Civil Liberties Union</u>, 521 U.S. 844, 874 (1997).

234. 1st Amendment freedoms  are most in danger when the government seeks to control thought or to justify its laws for that impermissible end. **The right to think is the beginning of freedom, and speech must be protected from the government because speech is the beginning of thought.** <u>Ashcroft</u> v. <u>Free Speech Coalition</u>, 535 U.S. 234, 253 122 S.Ct. 1389, 152 L.Ed.2d 403 (2002).

235. Infringement of an individual's right to read or observe what he pleases, is so fundamental to our scheme of individual liberty**, its restriction may not be justified by the need to ease the administration of otherwise valid criminal laws.** <u>Smith</u> v. <u>California</u>, 361 U.S. 147,  80 S.Ct. 215,4 L.Ed.2d 205 (1959).

**Internet Use Via Cell Phones**

236.   Social media allows users to gain access to information and communicate with one another on any subject that might come to mind.

237.   Many individuals use a smart phone more then a computer to meet their internet needs to stay informed, search for housing, goods etc...

238.   Cell phones, which are now such a pervasive and insistent part of daily life that the proverbial visitor from Mars might conclude they were an important feature of human anatomy.   Chief Justice Roberts, **unanimous** decision Riley v. California, __ U.S. __, 134 S.Ct. 2473, 2484,  189 L.Ed.2d 430 (2014).

239.   Modern cell phones contain "the privacies of life," The fact that technology now allows an individual to carry such information in  hand does not make the information any less worthy of the protection for which the Founders fought. Riley, at 2495-96.

240.   In protecting all peoples' privacy interest the U.S. Supreme Court has held:

> We cannot deny that our decision today will have an impact on the ability of law enforcement to combat crime. Cell phones have become important tools in facilitating coordination and communication among members of criminal enterprises, and can provide valuable incriminating information about dangerous criminals. **Privacy comes at a cost.**  Riley at 2493.

241.   The internet restrictions and conditions of SORNA are the basis of the restrictions ruled invalid in  Packingham, v. North Carolina  __U.S. __ 137

53

S.Ct. 1730, 198 L.Ed.2d 273, 85   (2017), and are similar in content to Michigan's SORA.  Any such similar restrictions of any SORA type statute are Unconstitutional under the 1ˢᵗ Amendment of the United Stated Constitution.

**Freedom of Association**

242. All of the above restrictions on registrants puts their whole life and being in the public view and are punitive in affect. John Doe #1, #2,#3, Florida Action  v. Miami-Dade County, Florida 8 46 F.3d 1180 (11th Cir. 2017)(2017): Florida housing SORA restrictions punitive, cites Does v.  Snyder. Wallace v. Indiana, 905 N.E.2d 371,382 (Ind.2014) housing restrictions, sweeping, punitive. Kentucky v. Baker, 295 S.W.3d 437, 447 (Ky. 2009).

243. Those who may want to hire, communicate, offer housing or even live with a registrant are faced with the real prospect of  themselves being shunned.

244. The "Chilling effect" of closing the lines of communication, interaction, and housing, employment serves little if any purpose other then to punish those who have fulfilled their sentence with a prior loss of their liberty interest.

We should return to The National Sex Offender Registry (NSOR) a law-enforcement only database that is a file of the National Crime Information Center's (NCIC) database managed by the Federal Bureau of Investigation (FBI) Criminal Justice Information Services (CJIS) division. The NSOR was created in the late 1990s

54

to store data on every registered sex offender in the United States, and to provide law enforcement nationwide access to that data.

A return to NSOR (Appendix pg 5)would eliminated nearly every 1st Amendment issue cited. The Statute sections above are clearly Unconstitutional and should be invalidated.

In short the govt can have and store a registrants personal information but it must be kept to the govt and not publicly disseminated. NASA v. Nelson 562 U.S. 134 138, ,131 S.Ct. 746, 178 L.Ed.2d 667 (2011),  a constitutional privacy "interest in avoiding disclosure of personal matters." Whalen v. Roe, 429 U.S. 589, 599-600, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977); Nixon v. Administrator of General Services, 433 U.S. 425, 457  (1977).

## COUNT V

### SORNA,  SORA & SORA TYPE STATUTES VIOLATE THE PRIVILEGES AND IMMUNITIES CLAUSES ARTICLE IV, § 2, & THE 14TH AMENDMENT OF THE UNITED STATES CONSTITUTION

245. Plaintiff incorporates all preceding and subsequent paragraphs by reference.

246. The in-person reporting requirements of **34 U.S.C. § 20914 Information required in registration Travel, 18 U.S.C. § 2050 Failure to Register (Appendix pg 141)**(including all 3-day reporting requirements) 34U.S.C. §

20918, and M.C.L.§ 28.725(7) violate the Travel Privileges and Immunities clauses Article IV, § 2, and the 14th Amendment and constitute a continuing seizure 4th Amendment.

247. If registrants are not changing their domicile there is no compelling or legitimate reason for them to have to report their presence in another state.

248. The requirement that registrants make frequent, in-person appearances before law enforcement, moreover, appears to have no relationship to public safety at all. The punitive effects of these blanket restrictions thus far exceed even a generous assessment of their salutary effects. Does #1-5 v. Snyder, 834 F3d 696, 705 (6th Cir. 2016).

249. "The Constitution does not permit a legislature to "set a net large enough to catch all possible offenders" Chicago v. Morales, 527 U.S. 41, 59 119 S.Ct. 1849,144 L.Ed.2d 67, (1999). See Lanzetta v. New Jersey, 306 U.S. 451, 453, 59 S.Ct. 618, 83 L.Ed. 888 (1939) which is what the complex web of various SORNA, SORA and SORA type statutes reporting provision do in reality.

250. A law which punished conduct which would not be blameworthy in the average member of the community would be too severe for that community to bear. Lambert v. California, 355 U.S. 225, 230 78 S.Ct. 240,, 2 L.Ed.2d 228 (1957). Citing what Holmes wrote in The Common Law.

56

251. [A]n individual's decision to remain in a public place of his choice is as much a part of his liberty as the freedom of movement inside frontiers that is "a part of our heritage" . . . the right to move "to whatsoever place one's own inclination may direct" was identified in Blackstone's Commentaries. (1 W. Blackstone, Commentaries on the Laws of England 130 (1765). Kent v. Dulles, 357 U.S. 116, 126, 78 S.Ct. 1113, 2 L.Ed.2d 1204 (1958). Also see. Art. IV, Articles of Confederation).

252. Freedom to travel throughout the United States has long been recognized as a basic right under the Constitution.[20]

253. All citizens of the United States are members of the same community and must have the right to pass and re-pass through every part of it without interruption, as freely as in our own States. See United States v. Guest, 86 S.Ct. 1170, 383 U.S. 745, 16 L.Ed.2d 239 (1966), United States v. Wheeler, 254 U.S. 281, 293, 41 S.Ct. 133, 65 L.E. 270 (1920). This includes registrants.

---

[20]
United States v. Wheeler, 254 U.S. 281, 293, 41 S.Ct. 133, 65 L.E. 270 (1920), citing Ward v. Maryland, 79 U.S. (12 Wall) 418, 20 L.Ed. 449,(1871):
"[P]rivileges and immunities," . . . Beyond doubt, those words are words of very comprehensive meaning, but it will be sufficient to say that **the clause plainly and unmistakably secures and protects the right of a citizen of one state to pass into any other State of the Union for the purpose of engaging in lawful commerce, trade, or business**.

254. As cited supra Federal SORNA and Michigan's SORA are both located within criminal code. They both impose criminal sanctions.

255. It is still true today that :

"[P]ersonal liberty consists, says Blackstone, in the power of locomotion, of changing situation, or removing one's person to whatever place one's own inclination may direct, without restraint. Civil Rights Cases, 109 U.S. 3, 39, 3 S.Ct. 18, 27 L.E.2d 835 (1883) (Harlan, J., dissenting).

256. "[T]he right to remove from one place to another according to inclination, is an attribute of . . . liberty . . . secured by the Fourteenth Amendment and by other provisions of the Constitution. Williams v. Fears, 179 U.S. 270, 274, 21 S.Ct. 128, 45 L.Ed. 186 (1900). This equally applies to registrants.

257. The right to remove is deemed to embrace the right of the citizen to be free in the enjoyment of all his faculties, to be free to use them in all lawful ways, to live and work where he will, to earn his livelihood by any lawful calling, to pursue any livelihood or avocation. Willaims v. Fears at 274. Also see Edwards v. California, 314 U.S. 160, 62 S.Ct. 164,, 86 L.Ed. 119 (1941).

258. Even the act of mandating registrants carry and obtain current ID violates the "privileges and Immunities" clause. (City of Chicago v. Morales, 527 U.S. 41, 54, 119 S.Ct. 1849, 144 L.E.2d 67 (1999); see also Kolender v. Lawson, 461 U.S. 352, 358, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983) (noting that anti-loitering

58

statutes which required individuals to provide **"credible and reliable"**

**identification, "implicated consideration of the constitutional right to**

**freedom of movement"**)

259. [W]alking, loitering, and wandering [are]"historically part of the amenities of life as we have known them." Papachristou v. City of Jacksonville, 405 U.S. 156, 164, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972).

260. Freedom of movement, at home and abroad, is important for job and business opportunities—for cultural, political, and social activities—for all the commingling which gregarious man enjoys. Johnson v. City of Cincinnati, 310 F.3d 484, 498 (6th Cir. 2002).

261. "Those with the right of free movement use it at times for mischievous purposes. But that is true of many liberties we enjoy. We nevertheless place our faith in them, and against restraint, knowing that the risk of abusing liberty so as to give rise to punishable conduct is part of the price we pay for this free society." Johnson v. City of Cincinnati, citing Aptheker v. Secretary of State, 378 U.S. 500 (1964): Justice Douglas concurring.[21]

---

[21]

50 years later in a **unanimous** decision Chief Justice Roberts made a similar observation in regard to protecting Individual Rights. Riley v. California, __ U.S. __, 134 S.Ct. 2473, 2484, 189 L.Ed.2d 430 (2014). The Court held: "We cannot deny that our decision today will have an impact on the ability of law enforcement to combat crime"at 2493. But **"Privacy comes at a cost."** Riley at 2493.

262. [T]he ability to "walk the streets, without explanation or formal papers is surely among the cherished liberties that distinguish this nation from so many others." Gomez v. Turner, 672 F.2d 134, 143-44 n. 18 (D.C. Cir. 1982).

263. If traveling from state to state a registrant is expected to know the vast complex set of every SORA type statue in every jurisdiction.  This is a serious restraint on freedom. Also see **18 U.S.C. § 2050 Failure to Register.**

264. "No one may be required at peril of life, liberty or property to **speculate** as to the meaning of penal statutes." Chicago v. Morales,  527 U.S. 41, 59 119 S.Ct. 1849,144 L.Ed.2d 67, (1999). Lanzetta v. New Jersey, 306 U.S. 451, 453 (1939). At 59.

Wherefore Plaintiff asserts that SORNA, SORA & SORA type statutes place Unconstitutional restrictions on movement in regard to work, social activities, and travel.  Such restrictions (noted supra) do not serve a legitimate state purpose and infringe on textually committed rights and protections. Such restrictions are repugnant to the intent of the Framers and of the Constitution of the United States of America and should be ruled null and void to plaintiff and all registrants.

60

## COUNT VI

## SORNA,  SORA
## & SORA TYPE STATUTES VIOLATE
## THE 4th AMENDMENT OF
## THE UNITED STATES CONSTITUTION

265.   Plaintiff incorporates all preceding and subsequent paragraphs by reference.

266.   The Fourth Amendment provides:

> "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

267.   As cited supra Federal SORNA and Michigan's SORA are not civil statutes, both statutes and their provisions are located within criminal code,  both impose criminal sanctions.

268.   "The Constitution does not permit a legislature to "set a net large enough to catch all possible offenders " Chicago v. Morales.

**"Continuing Seizure." Albright**

269.   The mandatory registration requirements and restrictions of  SORNA, SORA & SORA type statutes violate the 4th Amendment of the United States Constitution by subjecting registrants to a state of  "continuing seizure."

270. The statutes in question are not civil and are embedded with criminal penalties, warranting strict scrutiny.

271. When criminal penalties are at stake . . a relatively strict test is warranted. Springfield Armory, v. City of Columbus, 29 F.3d 250, 251-252 (6th Cir. 1994).

272. If traveling from state to state a registrant is expected to know the vast complex set of every SORA type statue in every jurisdiction. This is a an impossible task/disability and a serious restraint on freedom, leaving registrants to speculate to the meaning of various statues.

273. "No one may be required at peril of life, liberty or property to **speculate** as to the meaning of penal statutes." Chicago v. Morales, 527 U.S. 41, 59 (1999). Lanzetta v. New Jersey, 306 U.S. 451, 453 (1939).

274. A registrant **"is scarcely at liberty"** and "remains apprehended, arrested in their movements, **indeed 'seized** so long as they are bound to answer the state's registration requirements and restrictions or be confronted with a loss of liberty." Albright v. Oliver, 510 U.S. 266, 279, (1994).

275. Justices Stevens correctly noted in his dissent in Albright:

"[T]he initial seizure of registrant continues until discharge." which may never occur, but will last at the minimal 15 to life. at 290.

276. "[T]he full scope of the liberty guaranteed by the Due Process Clause . . . is not

a series of isolated points . . . . It is a rational continuum which, broadly speaking, includes a freedom from all substantial arbitrary impositions and purposeless restraints . . . ." Justice Souter, concurring at 288 Albright.

277. [M]ovement is restrained when "seizure occurs or bond terms are imposed" Justice Souter, at 291 Albright. Yet registrants are bound by the disabilities of terms of statutory language to comply with restrictions and restraints.

278. The laws in question punished conduct which would not be blameworthy in the average member of the community as such the restrictions in question are too severe for that community to bear. Lambert v. California.

279. Travel restrictions via court order have been found to diminish liberty constituting a seizure in the 2nd, 3rd and 5th Circuits, the 6th Circuit has not addressed the issue directly to date. Murphy v. Lynn, 118 F.3d 938 (2nd Cir. 1997), Gallo v. City of Philadelphia, 161 F.3d 217, 222 (3d Cir. 1998). Evans v. Ball, 168 F.3d 856, 861 (5th Cir. 1999).

280. For the reasoning noted in Count V, the social media and internet restrictions also constitute an unreasonable seizure. Riley v. California, __ U.S. __, 134 S.Ct. 247, 189 L.Ed.2d 430 (2014)

Wherefore Plaintiff asserts that SORNA, SORA & SORA type statutes and their reporting and travel restrictions equate to an Unconstitutional seizure in violation of

the 4th Amendment to the United States Constitution.  Such restrictions do not serve a legitimate state purpose and infringe on textually committed rights and protection and. are repugnant to the intent of the Framers and of the Constitution of the United States of America and should be ruled null and void to plaintiff and all Registrants.

## COUNT VII

### SORNA,  SORA &
### SORA TYPE STATUTES
### ARE OVERBREADTH & VAGUE
### VIOLATING THE 1st & 14TH AMENDMENTS
### TO THE UNITED STATES CONSTITUTION

281.   Plaintiff incorporates all preceding and subsequent paragraphs by reference.

282.   SORNA, SORA  & SORA type statutes are equal parts overbreadth and vague denying registrants proper  notice in violation of the due process clause of the 14th amendment to the United States Constitution.

283.   SORNA and SORA are impermissibly vague, and serve as an unconstitutional prior restraint on lawful speech.

**284.   Federal SORNA and Michigan's SORA are not civil regulations both statutes are located within criminal code and impose criminal sanctions on otherwise ordinary daily activities which are not crimes.**

285.   The words 'due process of law' . . . 'convey the same meaning as the words 'by the law of the land' in Magna Charta.' Hurtado v. People of State of California,

64

110 U.S. 516,544, 4 S.Ct. 292,, 28 L.Ed. 232 (1884), citing, <u>Murray</u> v. <u>Hoboken.</u>, 59 U.S. 272, 277 15 L.Ed. 372 (1856).

286. [T]he words 'by the law of the land,' as used originally in Magna Charta, . . . are understood to mean due process of law. <u>Hurtado</u>: Lord Coke at 553.

287. SORNA, SORA & SORA have a vast array of requirements and restrictions which make it impossible for most registrants to understand**." It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined."** <u>Grayned</u> v. <u>City of Rockford</u>, 408 U.S. 104, 108, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972).

288. SORNA, SORA & SORA type statutes are overreaching and have evolved into a complex web of restrictions and requirements affecting normal activities of daily life faced by no other group in this Nation.

289. SORNA, SORA & SORA type statutes are patently vague and confusing, especially in regard to travel restrictions. Going from state to state the variants of individual state statutes leave registrants unclear if they are in violation of the law even if the only activity they are engaged in is traveling through the State. Also see **18 U.S.C. § 2050 Failure to Register**.

290. Because SORNA, SORA & SORA type statutes are vague, indefinite, and uncertain. They fix no immutable standard of guilt, but leave such standards to

the variant views of the different courts and juries which may be called on to enforce, such statutes. This vague, overbreadth, archaic process is invalid and repugnant to the United States Constitution. United States v. L. Cohen Grocery Co., 255 U.S. 81, 87, 41 S.Ct. 298, 65 L.Ed. 516 (1921).

291. The statutes in question **create a criminal prohibition of alarming breadth**. "In the First Amendment context, a law may be invalidated as overbroad if "a 'substantial number' of its applications are unconsti-tutional, ' "judged in relation to the statute's plainly legitimate sweep[22].

292. The Fourteenth Amendment requires due process of law for the deprival of "liberty," just as for deprival of "life," and there cannot constitutionally be a difference in the quality of the process based merely upon a supposed difference in the sanction involved. Gideon v. Wainwright, 372 U.S. 335, 350, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).

293. Substantive due process applies to the right a plaintiff has been denied, life, liberty or property. County of Sacramento v. Lewis 523 U.S. 833 (1998). Also

---

[22]

" United States v. Stevens, 559 U.S. 460, 130 S.Ct. 1577, 176 L.Ed.2d 435(2010), citing Washington State Grange v. Washington State Republican Party, 552 U.S. 442, 449, n. 6, 128 S.Ct. 1184, 170 L.Ed.2d 151 (2008). See Washington v. Glucksberg, 521 U.S. 702, 740, n. 7, 117 S.Ct. 2258, 117 S.Ct. 2302, 138 L.Ed.2d 772 (1997) (Stevens, j., concurring)statute lacks any "plainly legitimate sweep).

see Daniels v. Williams, 474 U.S. 327, 106 S.Ct 662, 665, 88 L.Ed. 2d 662 (1986) Cleveland Bd. of Educ, v. Loudermill, 470 U.S. 532, 105 S.Ct 1487, 84 L.Ed. 2d 494 (1985).

294. If visiting another state even for a day registrants have to give notice, obtain permission several days in advance or face a criminal sanction. This restraint and disability can interfere with ordinary pursuits such as attending a graduation, wedding or funeral.

295. If moving to another state registrants are required to check in with that state also or be found to be in violation of that states' SORA type statue. **18 U.S.C. § 2050** Failure to Register (Appendix pg 141)

296. A registrant has to inform law enforcement of any changes in employment or address even if work site addresses change week to week or day to day.

297. "No one may be required at peril of life, liberty or property to **speculate** as to the meaning of penal statutes." Chicago v. Morales, 527 U.S. 41, 59 (1999). Lanzetta v. New Jersey, 306 U.S. 451, 453 (1939).

298. [W]hen a statute does not threaten constitutionally protected activity, if it imposes criminal sanctions, a facial analysis is appropriate, . . . and a "relatively strict test is warranted." United States v. Blaszak, 349 F.3d 881, 888-89 (6th Cir. 2003).

299.   The court must apply a relative strict standard of scrutiny here where criminal sanctions apply.  U.S. v. Caseer, 399 F.3d 828, 836 (6th Cir. 2005).

300.    A statute is unconstitutionally vague and violates the Due Process Clause if it fails to define the offense with sufficient definiteness such **that ordinary people can understand** the prohibited conduct or to establish standards to permit law enforcement personnel to enforce the law in a **non-arbitrary**, non-discriminatory manner[23].

301.   "[T]he full scope of the liberty guaranteed by the Due Process Clause . . . is not a series of isolated points . . . . It is a rational continuum which, broadly speaking, includes a **freedom from all substantial arbitrary impositions and purposeless restraints** . . . ."  Justice Souter, concurring at 288 Albright.

302.   The touchstone has always been ...A law which punished conduct which would not be blameworthy in the average member of the community would be too severe for that community to bear. Lambert v. California.

303.   The ever-changing standards of conduct and enhanced prison sanctions imposed by SORNA, SORA and SORA type statutes are essentially disguised as a

---

[23]

 Blaszak, 888-89, citing Springfield Armory  v. City of Columbus, 29 F.3d 250, 252 (6th Cir. 1994). See Kolender v. Lawson, 461 U.S. 352, 357, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983). Hoffman Estates v. Flipside, 455 U.S. 489,498-99, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982).

residual clause Trojan Horse.

304. The repeated failure to craft a principled standard out of the residual clause and the persistent inability to apply the clause in a consistent way confirm its hopeless indeterminacy. Johnson v. United States, __ U.S. __, 135 S.Ct. 2551 192 L.Ed.2d 569, (2015): (8-1) Opinion Justice Scalia.

305. As Chief Justice Roberts noted the Supreme Court: will not uphold an unconstitutional statute merely because the Government promises to use it responsibly. Nor can the Court construe statutory language to avoid constitutional doubt. United States v. Stevens, 559 U.S. 460, 463, 130 S.Ct. 1577, 176 L.Ed.2d 435(2010) (8-1 decision).

Wherefore Plaintiff asserts that SORNA, SORA & SORA type statutes and their reporting and travel restrictions are unconstitutionally overbreadth and vague in violation of the 1st Amendment to the United States Constitution.

Plaintiff requests this Court to hold the statutes in question do not serve a narrowly tailored compelling state interest and infringe on textually committed rights and protections. That such restrictions are repugnant to the intent of the Framers, the U.S. Constitution and are ruled null and void to plaintiff and all registrants.

69

## THE ACTIONS COMPLAINED OF ARE
## CAPABLE OF REPETITION YET EVADING JUDICIAL REVIEW

306.  Plaintiff incorporates all preceding and subsequent paragraphs by reference.

307.   As cited above the DOJ has taken the position that SORNA, SORA and SORA type statutes do not apply to the states that comprise The United States 6th Circuit.  Any registrant from any 6th Circuit State does not have to register in their home state or any other state of the 6th Circuit.

308.   Despite the DOJ position  on Does #1-5 v. Snyder, 834 F3d 696 (6th Cir. 2016) the State of Michigan is still unlawfully enforcing invalidated provisions or SORA  despite the Sixth Circuit ruling.

309.  In a show of direct contempt and repudiation of Stare Decisis and the United States Constitution the Michigan Court of Appeals dating between June 26, 2018 and November 15, 2018 has openly rejected the findings in several unpublished Per Curium. opinions and 1 published opinion dated August 2, 2018 (Appendix pg 110).

310.  The Michigan Court of Appeals  justified their position repeatedly stating:

**Because the earlier decisions of this Court are binding, MCR 7.215(J)(1), we are not at liberty to follow a conflicting decision rendered by the Sixth Circuit.** Michigan v. Fabela, No. 337365, Court of Appeals of Michigan.  June 26, 2018-UNPUBLISHED: at page 27 of Appendix pg 128.

70

311. In Contrast to the statement directly above the Office of the Attorney General of the State of Michigan knows by the **"clearest proof"** that <u>Does</u> v. <u>Synder</u> is to be given **"precedential weight"**:

> [A] letter to the Michigan Supreme Court, the **Solicitor General of Michigan** stated that **Doe is entitled to "precedential weight" and that "the State waives the argument that it may retroactively apply the 2006 and 2011 amendments to [SORA]."** October 10, 2017 Supplemental Authority Letter from the Solicitor General to Larry Royster, Clerk of the Court, <u>People</u> v <u>Temelkowski</u>, 901 N.W.2d 842 (2017). <u>Spencer</u>, V. <u>Benzie County</u>, No. 337827, Court of Appeals of Michigan, November 14, 2017. UNPUBLISHED. **(See footnote #3).**

312. While the State of Michigan Appellate Courts have not followed <u>Synder</u>, several Federal District Courts of the Sixth Circuit have upheld and/or adopted <u>Synder</u>, creating inconsistent judgments[24].  Also see para #332-333.

---

[24]   One panel of the 11th Circuit also and District Courts in N.C. and Co.
<u>Florida Action</u>  v. <u>Miami-Dade Dept.Corr.</u> 846 F.3d 1180 (**11th Cir**. 2017)
<u>Mary Roe</u> **v.** <u>Snyder</u>**,** 240 F.Supp.3d 697 (**E.D.Mich**. 2017)
<u>Doe</u> v. <u>Kentucky</u>,  83 F.Supp.3d 608 (**E.D.Ky**. 2017)
<u>Millard</u> v. <u>Rankin</u>, 265 F.Supp.3d 1211 (**D.Colo**. 2017)
<u>United States</u> v. <u>Wass</u>, No. 7:18-CR-45-BO (**E.D. N.C.** Jul. 5, 2018)
<u>Coates</u> v. <u>Snyder</u>, No. 1:17-CV-1064. (**W.D. Mich**. June 12, 2018) No. 28 filed 07/03/18Order approving (ECF No. 27)
<u>Lewis</u> v. <u>Snyder,</u> No. 1:17-cv-10808 (**E.D. Mich** June 6, 2018)
<u>Dentry</u> v. <u>Michigan,</u> 2:17-cv-10643, (**E.D. Mich.** February 9, 2018)
<u>Price,</u>v. <u>Edwards,</u> No. 17-10601,(**E.D. Mich**.)

313. The Does #1-5 v. Snyder, 834 F3d 696 (6th Cir. 2016) court held SORA violated the Ex post facto clause of the United States Constitution and as such the holding is in fact binding on the State of Michigan. Marbury v. Madison, 5 U.S. (1 Cranch) 137 (1803) Article VI, Sec 2 Supremacy Clause (Federalist 81).

314. Plaintiff has requested the Court to strike down SORNA, SORA and SORA type Statutes.

315. If Plaintiff is granted the relief requested, any State or any other district or territory under United States control has to respect this Court's Order by giving full faith and credit, respecting Plaintiff's and other registrants' right to freely travel to any of the places noted above and not be subjected to the affirmative disability and restraint of being required to register due to their presence in that place whether their presence is temporary or permanent.

316. Even if the relief requested is granted to Plaintiff, the violations in question can still be repeated if the same relief is not extended to all registrants thus evading judicial review. **(See para #332-333 infra, Appendix pgs 110-38).**

317. As noted supra, registration statutes have been struck down in several states and are increasingly under attack. In the interest of judicial economy, the use of resources, public interest and policy concerns would best be served by extending the requested relief to all registrants.

72

318. The relief requested can be had by simply invalidating SORNA, SORA and any provision from SORNA that has found its way into any other SORA type statute.

319. It is well settled that **"a defendant's voluntary cessation** of a challenged practice **does not deprive a federal court** of its power to determine the legality of the practice." "[I]f it did, the courts would be compelled to leave '[t]he defendant . . . free to return to his old ways.' Friends of The Earth, v. Laidlaw Envtl. Servs, 528 U.S. 167 189, 120 S.Ct 693, 145 L.Ed 2d 610 (2000).

320. A live claim for nominal damages will prevent dismissal [of a cause of action] for mootness." Bernhardt v. City. of Los Angeles, 279 F.3d 862, 872 (9th Cir. 2002) . 42 U.S.C. § 1983 does allow for the recovery of nominal damages. **42 U.S.C. § 1983 does not bar punitive damages** Smith v. Wade 461 U.S. 30 (1983).

321. Even if a lead plaintiff ceases to belong to a class action seeking a remedy, the case shall go forward and not be mooted[25].

---

[25] Sosna v. Iowa, 419 U.S. 393, 95 S. Ct. 553, 42 L. Ed. 2d 532 (1975). See Southern Pacific Terminal v. ICC, 219 U.S. 498, 31 Sup. Ct. Rep. 279, 55 L.Ed. 310 (1911) Wisconsin Right to Life, Inc., 551 U.S. 449. 462 (2007). U. S. v. Concentrated Phosphate Export Assn, 393 U. S. 199, 203 (1968).

73

322. Under the last administration the State of Michigan was continuing to enforce invalidated provisions of SORA and did so under the cloak of unpublished decisions of the Michigan Court of Appeals opinions. Appendix pgs 110-134.

323. Federal District Courts in Michigan have respected and upheld the _Doe_s v. Snyder opinion and other Federal Jurisdiction have also embraced the holding Does v. Synder. (See para 312, and ft 24)

324. The standard to be applied here is the capable-of-repetition-yet-evading-judicial review mootness exception that applied to the class action in Gerstein v. Pugh, 420 U.S. 103, 95 S. Ct. 854, 43 L. Ed. 2d 54 (1975).

325. [A] defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice."Johnson v. Cincinnati, 310 F.3d 484, 491(6th Cir. 2002). See Deja Vu of Nashville, Inc. v. Met. Gov't of Nashville, 274 F.3d 377, 387 (6th Cir. 2001) Mesquite v. Aladdin's Castle,., 455 U.S. 283, 289, 102 S.Ct. 1070, 71 L.E.2d 152 (1982).

326. This matter is a textbook example of a matter being Capable of Repetition yet Evading Judicial Review, United States v. Nixon, 418 U.S.683, (1974), Globe Newspaper Company, v. Superior Court County of Norfolk, 457 U.S. 596 (1982).

**IMMUNITY**
**DOES #1-5 v. SNYDER AND THE**
**CONSTITUTIONAL ISSUES RAISED ABOVE**
**CLEARLY ESTABLISHED STARE DECISIS**

327. Plaintiff incorporates all preceding and subsequent paragraphs by reference.

328. It would be fiction to separate any Defendant from their offices.

329. "[A] suit against a state official in his or her official capacity is not a suit against an official but rather is a suit against the official's office. Will v. Michigan Department of State Police, 491 U.S. 58, 71 (1989)

330. Does #1-5 v. Snyder, 834 F3d 696 (6th Cir. 2016), held SORA is punitive. A live claim even for nominal damages under 42 U.S.C. § 1983 **does not bar punitive damages** Smith v. Wade 461 U.S. 30 (1983).

331. The contours of the rights that have been violated had been acknowledged by the DOJ noting that the Does #1-5 v. Snyder decision is controlling and binding for the states in the circuit: Kentucky, Michigan, Ohio and Tennessee. Taken directly from the DOJ https://smart.gov/caselaw.htm. SMART- Office of Sex Offender Sentencing, Monitoring, Apprehending, Registering, and Tracking March 2018) Appendix pg 1-8.

332. The State of Michigan Defendants in fact know Does v. Synder is a Stare Decisis opinion in a :

75

[A] letter to the Michigan Supreme Court, the **Solicitor General of Michigan** stated that **Doe is entitled to "precedential weight" and that "the State waives the argument that it may retroactively apply the 2006 and 2011 amendments to [SORA]."** October 10, 2017 Supplemental Authority Letter from the Solicitor General to Larry Royster, Clerk of the Court, People v Temelkowski, 901 N.W.2d 842 (2017). **Spencer, v. Benzie County, No. 337827, Court of Appeals of Michigan, November 14, 2017. UNPUBLISHED**. (Appendix pg 134).

333. In spite of the paragraph above the Plaintiff was subjected to continued multiple litigations, which apparently just recently ended. Michigan v. Spencer, Nos. 343468, 343367 COA. Michigan January 22, 2019  UNPUBLISHED.  The Court in Spencer held later amendments to SORA which predated sentence did not affect Defendant  (only 1999 PA 85 applies to defendant, later changes to SORA do not affect his case.  Appendix pg 138).

334. By  not respecting the Constitutional duty and obligation of comity (the holding of Does #1-5 v. Snyder) the State of Michigan via all State defendants has engaged in a reckless pattern of indifference and disregard for the truth, they have engaged in an official, intentional, systematic policy, custom and pattern of complete disregard for the Constitution of the United States of America.

335. Qualified immunity is not a given right, "qualified immunity . . . . protects all but the plainly incompetent or those who knowingly violate the law." Ashcroft v. al-Kidd, 563 U.S. 740, 744 (2011), citing: Malley v. Briggs, 475 U.S. 335,

76

341 (1986).[26]

336.   Even "[n]ovel factual circumstances" Hope v. Pelter, 536 U.S. 730, 741 (2002) do not necessarily create qualified immunity.

337.   Qualified immunity will not be extended to an official when a plaintiff can show (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established. (Harlow good-faith immunity) Harlow v. Fitzgerald, 457 U.S. 800, 808-13 (1982).   Atherton v. District of Columbia Office of the Mayor, 567 F.3d 672, 686-87 (D.C. Cir. 2009),

338.   A plaintiff can overcome an assertion of qualified immunity by demonstrating "that the official's conduct lies so obviously at the very core of what the [Constitution] prohibits that the unlawfulness of the conduct was readily apparent to the official, notwithstanding the lack of caselaw" Hope v. Pelter at 774 quoting:  Smith v. Mattox, 127 F.3d 1416, 1419 (11th Cir. 1997).

339.   "[Qualified immunity operates to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful." Hope v. Pelter, 536 U. S. 730, 739 (2002)

---

[26]

Qualified immunity analysis begins with Pearson v. Callahan, 555 U.S. 223, 236, (2009), which overruled Saucier v. Katz, 533 U.S. 194 (2001).

77

340. The actions of the former and current State of Michigan defendants (cited in this section) are more then "fairly attributable" to the government. Rendell-Baker v. Kohn, 457 U.S. 830, 838, (1982). The Michigan Defendants are not entitled to the protections of qualified immunity.

341. A Plaintiff can rightfully sue a defendant in their "official capacity" and at the minimum obtain injunctive relief, Ex Parte Young, 209 U.S. 123, 124 (1908).

342. The 11th Amendment does not bar claims against defendants in their individual capacities. See Scheuer v. Rhodes, 416 U.S. 232, 237-38, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Also see Henry v. Metropolitan Sewer Dist., 922 F.2d 332, 338-39 (6th Cir.1990).

343. Defendants are well aware they are not clearly entitled to qualified immunity as noted in Coates v. Snyder, No. 1:17-CV-1064. United States District Court, W.D. Michigan, Southern Division June 12, 2018,  ECF No. 28 filed 07/03/18 Order approving (ECF No. 27).

344. The Magistrate Report and Recommendation in Coates noted: Defendants have presented a copy of a memorandum from the State of Michigan Prosecuting Attorneys Coordinating Council (PACC) . . . it raises concern regarding application of the 2006 and 2011 amendments to registered individuals whose criminal acts occurred prior to those amendments"

78

345. The PACC Memorandum . . .also states that "Prosecutions for violations of these specific sections could potentially proceed without immunity from Federal 1983 actions, if those prosecutions are subsequently found to be unconstitutional."

346. Lastly it was noted in Coates: Defendants have also filed a memorandum from the Michigan State Police, Sex Offender Registry Unit, stating in part that "Enforcement of any of the 2006 or 2011 requirements retroactively against any offender could subject the individual officers and law enforcement agencies to possible civil penalties." Michigan State Police document (ECF No. 16-3, PageID.59) (emphasis in original).

347. "[o]ne does not have to await the consummation of threatened injury to obtain preventive relief." Farmer v. Brennan 511 U.S. 825, 827 (1994).

348. Plaintiff reserves the right to sue former State of Michigan Attorney General Bill Schuette, former Governor Richard Synder and former Director of the Michigan State Police Col.Kriste Etue, Col.Kriste Etue in their individual capacities, based on the fact that Does #1-5 v. Snyder, 834 F3d 696 (6th Cir. 2016) is a Stare Decisis case directly on point which was not being followed since handed down.

349. Plaintiff reserves the right to amended his Complaint and add the current State

of Michigan officer holders in their individual capacities if they continue and embrace the same policies and practices wrongfully employed by their predecessors.

## REQUEST FOR DECLARATORY AND OTHER RELIEF

The statutes in question are criminal not civil, embedded in their core are criminal penalties[27], warranting strict scrutiny.  Springfield Armory, Inc. v. City of Columbus, 29 F.3d 250, 251-252 (6th Cir. 1994).

The  restrictions ( supra) imposed on registrants are the most sweeping obstacle to the rights of an accused or convicted individual since, Gideon v. Wainwright, 372 U.S. 335, 339,  83 S.Ct. 792,, 9 L.Ed.2d 799 (1963).

Registration is not an "accessory" it is a continuing restraint of liberty even after completion of a sentence and/or parole or probation and is excessive, punitive, and actually life-long parole.  The statutes in question should be invalidated by this Court.

As Justice Kennedy noted the statute in Packingham, (similar in content and application as Michigan's SORA and which only addressed 1st Amendment restraints

---

[27]

In 2017 SORNA was relocated from the Title 42 Public Health and Welfare, Chapter 151 - Chapter 151 - Child Protection and Safety to  **Criminal** Title 34 Crime Control and Law Enforcement-chapter 209 - Child Protection and Safety.  **(Old-42 U.S.C. § 16901**– **New 34 U.S.C. § 20901)**. http://uscode.house.gov/browse.xhtml

and disabilities) had the broadest reach of any case in the court's entire history, holding:

"It is instructive that no case or holding of this Court has approved of a statute as broad in its reach." At 1737.

Justice Kennedy correctly observed and noted in Packingham v. North Carolina:

[T]he troubling fact that the law imposes severe restrictions on persons who already have served their sentence and are no longer subject to the supervision of the criminal justice system is also not an issue before the Court.   At 1738.

Justice Kennedy's statement displays and acknowledges regret for the troubling restrictions McKune v. Lile and Smith v. Doe unleashed.   Though such restrictions were not before the Court in Packingham these matters are before this court, the time is clearly ripe to completely strike down   34 U.S.C. § 20901 and its progeny the State of Michigan's SORA (M.C.L. § 28.721 et. seq., as amended July 1, 2011 (SORA 2011).

NO version (past, present or future) of SORNA, SORA or SORA type statute should be applied to Plaintiff if it does not predate his 1993 (violates the Ex post facto clause) conviction, even then Plaintiff asserts the array of restrictions listed in the counts above violate multiple provisions of the Constitution of the United States of America.

In  Does #1-5 v. Snyder, 834 F3d 696 (6th Cir. 2016) Michigan's SORA was found to be punitive by the "clearest proof" (certiorari was denied), yet the State of Michigan has knowingly and willfully taken zero steps to accept this binding Stare Decisis .

Plaintiff has already once fully atoned for his  offense. The additional penalties are  punishment (the mark of an ex post facto law)  for past acts.  The disabilities and restraints in question  are  unjust and constitute a "continuing seizure" and double jeopardy.  Plaintiff' should not be required to register and should be removed from any SORNA and SORA list, or websites, **WHEREFORE** Plaintiff requests:

**1.** **ORDER**: that judgment shall enter declaring that the Federal SORNA Act  34 U.S.C. §20901; and Michigan SORA Act  M.C.L.  §  28.721 are Unconstitutional as applied to Plaintiff and any registrant whose conviction predates the creation of the above statutes or any earlier version of the above statutes.  The Acts violate the Ex post facto clause Article 1 § 9, § 10 of the United States Constitution:

**FURTHER ORDERED THAT:** Plaintiff's name be removed from the Federal and State of Michigan Sex Offender databases and websites within 48 hours.

**2.** **ORDER**: that judgment shall enter declaring that the Federal SORNA Act  34 U.S.C. §20901; and Michigan SORA Act  M.C.L.  §  28.721 are Unconstitutional as applied to Plaintiff and  any registrant.   The Acts subject registrants to multiple

punishments in violation of the 5th Amendment double jeopardy clause to the United States Constitution:

3.  **ORDER:** that judgment shall enter declaring that the Federal SORNA Act 34 U.S.C. §20901; and Michigan SORA Act M.C.L. § 28.721 are Unconstitutional as applied to Plaintiff and any registrant.  The Acts reporting, registering and internet posting of detailed information to the public violates the 1st Amendment rights of Privacy and Freedom of Association of the United States Constitution and multiple punishments in violation of the 5th Amendment double jeopardy clause to the United States Constitution.

4.  **ORDER:**  that judgment shall enter declaring that the Federal SORNA Act 34 U.S.C. §20901; and Michigan SORA Act M.C.L. § 28.721 are Unconstitutional as applied to Plaintiff and any registrant.  The Acts subject registrants to a "continuing state of seizure" in violation of the 4th Amendment to the United States Constitution. The term registrant as used here includes all registrants currently and in the future affected by 34 U.S.C. § 20901.

5.  **ORDER:** that judgment shall enter declaring that the Federal SORNA Act 34 U.S.C. §20901; and Michigan SORA Act M.C.L. § 28.721 are Unconstitutional as applied to Plaintiff and any registrant.  The Acts are overbreadth in their reach and overly vague in violation of the 1st Amendment of the United States Constitution and

83

the 14th Amendment due process, substantive due process and equal protection requirements of the United States Constitution.  The term registrant as used here includes all registrants currently and in the future affected Nationally by 34 U.S.C. § 20901.

6.      **ORDER:** that judgment shall enter declaring that the Federal SORNA Act  34 U.S.C. §20901; and Michigan SORA Act  M.C.L. § 28.721 are Unconstitutional as applied to Plaintiff and any registrant.  The Acts violate the Travel Privileges and Immunities clauses of Article IV § 2 and the 14th Amendment to the United States Constitution.   The term registrant as used here includes all registrants currently and in the future affected Nationally by 34 U.S.C. § 20901.

7.      **ORDER :** Plaintiff and any registrant whose conviction predates the creation of the statutes (and amendments) in question does not have to comply with any past, present or futures registration and reporting requirements of 34 U.S.C. § 20901 and Michigan SORA Act M.C.L. 28.721 or ANY reporting or registration requirements of ANY other State, District, Territory or Indian Country of the United States. Plaintiff is not subject to nor required to comply with ANY reporting or registration requirements in any State, District, Territory or Indian Country of the United States.

8.      **ORDER:** Plaintiff and any registrant do not have to comply with any past, present or future registration and reporting requirements of 34 U.S.C. § 20901 and

Michigan SORA Act M.C.L 28.721 or ANY reporting or registration requirements of ANY other State, District, Territory or Indian Country of the United States. Plaintiff is not subject to nor required to comply with ANY reporting or registration requirements in any State, District, Territory or Indian Country of the United States.

9.. **ORDER:** ANY SORA type statue or provision of a statute of ANY other State, District, Territory or Indian Country of the United States, which is found to have similar language, cause and affect to 34 U.S.C. § 20901 and Michigan M.C.L. 28.721 also be held to be Unconstitutional and in violation of the United States Constitution. Plaintiff is not subject to nor required to comply with ANY reporting or registration requirements in any other, State, District, Territory or Indian Country of the United States.

10. **ORDER:** ANY SORA type statute or provision of a Statute of ANY other State, District, Territory or Indian Country of the United States which is found to have similar language, cause and affect as 34 U.S.C. § 20901 and Michigan SORA Act M.C.L 28.721 which is found to have similar language, cause and affect to 34 U.S.C. § 20901 and Michigan M.C.L. 28.721 shall also be held to be Unconstitutional and in violation of the United States Constitution. Plaintiff is not subject to nor required to comply with ANY reporting or registration requirements in any other, State, District, Territory or Indian Country of the United States.

85

**All Issues are Properly Before This Court**

Plaintiff asserts and preserves for argument that the arguments cited above all defeat the statutory language in question via Article VI, Sec 2 Supremacy Clause.

This matter is within "the competence of the judiciary to enforce", Maine v. Thiboutot, 448 U. S. 1, 4 (1980) and is properly before the Article III Courts of the United States (Marbury v. Madison, 5 U.S. (1 Cranch) 137 (1803) Article VI, Sec 2 Supremacy Clause (also see Federalist No. 81).

## PENDING RULING U.S. SUPREME COURT IN REGARD TO THE AUTHORITY OF THE ATTORNEY GENERAL OF THE UNITED STATES SHOULD NOT AFFECT CLAIMS OF THIS CASE.

Recently the Supreme Court heard a challenge to SORNA Gundy v. United States Docket No. 17-6086 Fall term 2018, argued October, 2, 2018. (Gundy v. United States , 695 Fed.Appx. 639 (2nd Circuit 2017). The challenge is similar to that put forth in Reynolds v. United States, 565 U.S. 432 (2012). The current challenge concerns Congress delegating its authority to the U.S. Attorney General.

## **REQUEST FOR COST AND ATTORNEY FEES**

Plaintiff requests the Court to award reasonable costs and attorney fees as allowed by any applicable Federal, State, law or statute.

Plaintiffs may be considered prevailing part for attorney's fee purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought bringing suit <u>Hensley</u> v. <u>Eckerhart</u>, 461 U.S. 424, 433,103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983), 42 U.S.C. §1988.

**Dated: 2-5-2019**                                    Respectfully submitted,

<u>s/Daniel C. Willman</u>
Daniel C. Willman
Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing paper, with the court using the ECF system which will send notification of such filing to the following and/or I hereby certify that I have given notice of said filing by personal service of process or by mail using the United States Postal Service and will do so until the proper ECF respondent for each defendant is identified.

**This document may have been completed before the filing date. EFC stamp takes precedence if there is any conflict with the filing date on this paper.**

**Date: 2-5-2019**

S/Daniel C. Willman
Daniel C. Willman
Attorney for Plaintiff

## CERTIFICATE OF COMPLIANCE

I hereby certify that I consulted and complied with all local rules and that I electronically filed the forgoing with the clerk of the Court for the United States District Court for the Eastern District of Michigan Southern Division by using the CM/ECF system on:

**Date**: **2-5-2019**

**This document may have been completed before the filing date. EFC stamp takes precedence if there is any conflict with the filing date on this paper.**

S/Daniel C. Willman
Daniel C. Willman
Attorney for Plaintiff

88