UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

M.S. WILLMAN,

        Plaintiff,

v.

    Case No.: 19-10360
    Honorable Gershwin A. Drain

UNITED STATES OFFICE OF
ATTORNEY GENERAL, *et al.*,

        Defendants.

_____/

## OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR INJUNCTIVE RELIEF [#2]

### I. INTRODUCTION

Plaintiff M.S. Willman filed the instant action challenging the constitutionality of the Sex Offender Registration and Notification Act (SORNA), 34 U.S.C. § 20901 *et seq.*, a federal law that requires sex offenders to "register, and keep registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student." 34 U.S.C. § 20913(a).[1] Presently before the Court is the Plaintiff's Motion for Temporary

---

[1] In addition to his SORNA challenge, Plaintiff also challenged the constitutionality of Michigan's sex offender registration law- the Sex Offender Registration Act (SORA), MICH. COMP. LAWS § 28.723 *et seq*. However, on April 4, 2019, the Court entered the parties' Stipulated Order Dismissing the State Defendants who have agreed not to "enforce the 2006 and 2011 SORA amendments against Plaintiff." *See* Dkt. No. 16. Thus, the only claims before this Court are the constitutional challenges relative to the federal SORNA.

Restraining Order and Preliminary/Permanent Injunctive Relief, filed on February 5, 2019. The Government filed its Response in Opposition on March 25, 2019. Plaintiff filed his Reply brief on April 13, 2019. A hearing was held on June 7, 2019. For the reasons that follow, the Court will deny the Plaintiff's present motion seeking injunctive relief.

## II. FACTUAL BACKGROUND

On November 2, 1993, Plaintiff was convicted of criminal sexual conduct assault with intent to commit sexual penetration and robbery. Compl.¶ 21. At the time of his conviction, SORNA did not exist. Plaintiff served a ten-year sentence and successfully completed parole. *Id*. at ¶ 29.

In his Complaint, Plaintiff brings the following claims: Ex Post Facto Clause, Count I; Fifth Amendment Double Jeopardy Clause, Count II; Eighth Amendment Cruel and Unusual Punishment, Count III; First Amendment right to privacy, Count IV; Privileges and Immunities Clauses of Article IV and the Fourteenth Amendment, Count V; Fourth Amendment unreasonable seizure, Count VI; Overbreadth and Vagueness Doctrines of the First and Fourteenth Amendments, Count VII.

Plaintiff seeks a declaration that SORNA, as applied to him and "any registrant," violates the above provisions of the United States Constitution. He also seeks an order requiring the removal of his name from the federal sex offender

2

registry within 48 hours, and that he and "any registrant" need not comply with "any past, present, or future registration and reporting requirements" of SORNA.

### III. LAW & ANALYSIS

#### A. Standard of Review

Temporary restraining orders and preliminary injunctions are extraordinary remedies designed to protect the status quo pending final resolution of a lawsuit. *See University of Texas v. Camenisch*, 451 U.S. 390 (1981). Whether to grant such relief is a matter within the discretion of the district court. *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 540 (6th Cir. 2007). The same factors are considered in determining whether to grant a request for either a temporary restraining order or a preliminary injunction. *See Sandison v. Michigan High School Athletic Assoc.,* 64 F.3d 1026, 1030 (6th Cir. 1995). The four factors that must be balanced and considered before the court may issue a temporary restraining order or preliminary injunction include: (1) the likelihood of the plaintiff's success on the merits; (2) whether the plaintiff will suffer irreparable injury without the injunction; (3) the harm to others which will occur if the injunction is granted; and (4) whether the injunction would serve the public interest. *Certified Restoration*, 511 F.3d at 542; *In re Eagle-Pitcher Industries, Inc.*, 963 F.2d 855, 858 (6th Cir. 1992); and *N.A.A.C.P. v. City of Mansfield, Ohio*, 866 F.2d 162, 166 (6th Cir. 1989).

"None of these factors, standing alone, is a prerequisite to relief; rather, the court should balance them." *Golden v. Kelsey-Hayes Co.*, 73 F.3d 648, 653 (6th Cir. 1996). Preliminary injunctive relief "is an extraordinary measure that has been characterized as 'one of the most drastic tools in the arsenal of judicial remedies.'" *Bonnell v. Lorenzo*, 241 F.3d 800, 808 (6th Cir. 2001). It is well settled that, "[a]lthough no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. National Bd. of Medical Examiners*, 225 F.3d 620, 625 (6th Cir. 2000).

The party moving for injunctive relief has the burden to show that the circumstances clearly demand it. *Overstreet v. Lexington-Fayette Urban Cty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). "[T]he proof required for the plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a motion for summary judgment." *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000).

### B. Success on the Merits

#### 1. Ex Post Facto Clause

Plaintiff argues that because his conviction predates enactment of SORNA, its enforcement against him is retroactive punishment in violation of the Ex Post Facto Clause.

The Ex Post Facto Clause of the Constitution prohibits the Government from retroactively imposing additional punishment for the commission of a criminal offense. U.S. Const. art. I, § 9, cl. 3.

In the seminal case of *Smith v. Doe*, 538 U.S. 84, 89, 92 (2003), the Supreme Court considered whether retroactive application of Alaska's sex offender registry requirements to offenders convicted before the law took effect constituted punishment forbidden by the Ex Post Facto Clause. In determining that it did not, the *Smith* court applied a two-part test. *Id*. at 92. First, the *Smith* court considered whether the legislature intended to establish civil proceedings or punishment. *Id*.

After determining that the Alaska legislature intended to establish a civil, non-punitive regime, the *Smith* court then determined "whether the statutory scheme is "so punitive either in purpose or effect as to negate [the State's] intention to deem it civil." *Id*. (internal quotation marks omitted). *Id*. Relying on the factors set forth in *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168-69 (1963), the *Smith* court determined that the statute was not punitive in either purpose or effect because (1) publicizing sex offender information does not resemble the historical punishment of shaming because the "stigma" of the registry results from "the dissemination of accurate information," and "[o]ur system does not treat dissemination of truthful information in furtherance of a legitimate governmental objective as punishment, *id.* at 98; (2) "[t]he purpose and the

principal effect of notification are to inform the public for its own safety, not to humiliate the offender," *id*. at 99; and (3) the statute does not impose a restraint or disability because "offenders . . . are free to move where they wish and to live and work as other citizens, with no supervision." *Id*. at 101.

In support of his claim, Plaintiff relies heavily on *Does #1-5 v. Snyder*, 834 F.3d 696, 706 (6th Cir. 2016), where the Sixth Circuit Court of Appeals held that the retroactive application of the 2006 and 2011 Amendments to Michigan's SORA violates the Ex Post Facto Clause. The 2006 Amendment prohibited offenders from "living, working, or loitering within 1,000 feet of a school." *Id.* at 698. The 2011 Amendment classified offenders into Tiers based solely on the crime of conviction, as well as required offenders to register in person rather than through the mail. *Id.* The *Does #1-5* court concluded that while the Michigan legislature did not intend a punitive regime, the 2006 and 2011 amendments imposed restrictions that are similar to the punishments of banishment, shaming and parole/probation. *Id*. at 702-03. Ultimately, the *Does #1-5* court concluded that the retroactive application of SORA's 2006 and 2011 amendments to the plaintiffs was unconstitutional because Michigan's SORA "imposes punishment." *Id.* at 705-06.

However, *Does #1-5* has no bearing on the enforcement of SORNA on Plaintiff because that case only addressed the constitutionality of Michigan's

SORA. The two statutes are different. For instance, the 2006 amendment restricting offenders from living, working, or loitering within 1,000 feet of a school – a restriction that "put significant restraints on how registrants may live their lives" – has no similar provision in the SORNA. 834 F.3d at 701-03; *see Umbarger v. Mich.*, No. 1:12-CV-705, 2013 WL 444024, at *2 (W.D. Mich. Feb. 5, 2013) ("One prominent feature of SORA that clearly distinguishes it from SORNA . . . is that SORA also limits where sex offenders may work or reside.").

In any event, the Sixth Circuit, along with the majority of circuits, has already concluded that the SORNA does not violate the Ex Post Facto Clause. *See United States v. Felts*, 674 F.3d 599 (6th Cir. 2012). In *Felts*, the offender argued that retroactive application of SORNA violates the Ex Post Facto Clause because it increased the punishment for his crime. *Id*. at 605-06. The Sixth Circuit rejected this argument and observed that there is a "unanimous consensus among the circuits that SORNA does not violate the Ex Post Facto Clause." *Id*.; *Am. Civil Liberties Union of Nevada v. Masto*, 670 F.3d 1046, 1053 (9th Cir. 2012) ("Many of our sister circuits, however, have considered this issue. Unanimously they have concluded that retroactive imposition of SORNA requirements is constitutional."); *United States v. Neel*, 641 F. App'x 782, 794 (10th Cir. 2016) (noting the "consensus among our sister circuits that SORNA's retroactive application does not violate the federal Ex Post Facto Clause.")

Plaintiff counters that the 2017 reclassification of SORNA from the civil code to the criminal code is clear proof that Congress intended SORNA to be punitive. This argument is unavailing. The *Smith* court found that the placement and label of a statutory provision is not dispositive of whether the legislature intended the law to be punitive. *Smith*, 538 U.S. at 94-95 (holding that the partial codification of Alaska's sex offender law in Alaska's criminal code was "[in]sufficient to support a conclusion that the legislative intent was punitive."); *see also Cutshall v. Sundquist*, 193 F.3d 466, 474 (6th Cir. 1999) (concluding that the location of sex offender law within criminal procedure laws "does not assist us in determining whether the Act was intended to serve as punishment.")

Accordingly, Plaintiff cannot show a likelihood of success on the merits of his Ex Post Facto Clause claim.

### 2. Double Jeopardy Clause

Plaintiff argues that SORNA violates the Double Jeopardy Clause because a conviction under SORNA "based upon any registration failure is an offense of a lesser charge based on the original set of facts leading to placement on any list in the first place." *See* Plf.'s Mot. at Pg ID 270.

"The Double Jeopardy Clause of the Fifth Amendment prohibits more than one prosecution for the 'same offense,'" *Puerto Rico v. Sanchez Valle*, 136 S. Ct. 1863, 1867 (2016), meaning that it "protects against a second prosecution for the

same offense after conviction." *Currier v. Virginia*, 138 S. Ct. 2144, 2150 (2018) (internal quotation marks omitted). As long as each offense "requires proof of a different element" and "proof of a fact which the other does not," there is no double jeopardy risk. *Blockburger v. United States*, 284 U.S. 299, 304 (1932).

Here, Plaintiff's claim appears foreclosed by the Sixth Circuit's decision in *Felts*, where the court held that "failing to update [the] sex offender registry after the enactment of SORNA was entirely separate from [the offender's] crime of rape of a child and aggravated sexual battery." *Felts*, 674 F.3d at 606; *see also Smith*, 538 U.S. at 101-02 ("A sex offender who fails to comply with the reporting requirement may be subjected to a criminal prosecution for that failure, but any prosecution is a proceeding separate from the individual's original offense."); *Watkins v. W. Virginia State Police*, No. 3:15-CV-136, 2016 WL 4548470, at *3 (N.D.W. Va. Sept. 1, 2016) (rejecting double jeopardy challenge to retroactive application of SORNA, concluding that "requiring the Plaintiff to register as a sex offender is separate and distinct from his 1987 rape conviction."

Based on the foregoing authority, Plaintiff is not likely to succeed on the merits of his double jeopardy claim.

### 3. Cruel and Unusual Punishment

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. Plaintiff argues that "no other group

9

faces" the "restrictions, restraints and disabilities" imposed by SORNA. Plaintiff complains that offenders are "forever kept under the shadow of their crime" because they cannot "change domicile without giving notice" and "become invisible" as "their home addresses are listed permanently," along with their images.

The Sixth Circuit's decision in *Felts* that SORNA "does not increase the punishment for the past conviction," *Felts*, 674 F.3d at 606, and its holding in *Cutshall*, 193 F.3d at 477, forecloses Plaintiff's cruel and unusual punishment claim.

In *Cutshall*, the Sixth Circuit considered whether Tennessee's sex offender registry law violated the Eighth Amendment's ban on cruel and unusual punishment, among other constitutional challenges. Because the law did not impose punishment, the *Cutshall* court concluded it could not violate the Eighth Amendment's cruel and unusual punishment ban. *Id*. at 447 ("We have already concluded that the Act does not impose punishment; it is regulatory in nature. Therefore, it does not violate the Eighth Amendment's prohibition on cruel and unusual punishment.").

Plaintiff argues that the watershed landmark decision of *Timbs v. Indiana*, -- U.S. --, 139 S. Ct. 682, 203 L.Ed. 2d 11 (2019) has created a "dramatic landscape shift" which "clearly undercuts Defendants [sic] reliance on *Cutshall* . . . to

SORNA . . . because of [the] vast array of excessive punishments." Reply brief at Pg ID 422. However, *Timbs* addressed the Eighth Amendments' excessive fines clause and concluded it was incorporated by the Due Process Clause of the Fourteenth Amendment. *Id*. at 689. Plaintiff does not explain how the holding in *Timbs* undercuts the Sixth Circuit's decision in *Cutshall*.

Plaintiff has failed to demonstrate a likelihood of success on the merits of his cruel and unusual punishment claim.

### 4. Right to Privacy

Plaintiff alleges that the online publication of detailed information about him violates his right to privacy under the First Amendment. SORNA includes the following details in the registry: names, addresses of residence, work and school, physical descriptions, automobile descriptions and license plate numbers, criminal history information, information on intended international travel plans and photographs. 34 U.S.C. § 20914(a).

The Supreme Court has recognized a constitutionally protected privacy interest "in avoiding disclosure of personal matters." *Whalen v. Roe*, 429 U.S. 589, 599 (1977). The Sixth Circuit has read *Whalen* "narrowly, and will only balance an individual's interest in nondisclosure of informational privacy against the public's interest in and need for the invasion of privacy where the individual privacy interest is of constitutional dimension." *Kallstrom v. City of Columbus*,

136 F.3d 1055, 1061 (6th Cir. 1998). If the privacy interest is not of "constitutional dimension," rational-basis scrutiny applies, and the statute will be upheld if it is rationally related to legitimate government interests. *See Does v. Munoz*, 507 F.3d 961, 966 (6th Cir. 2007) ("We conduct rational-basis review of statutes that do not implicate a plaintiff's fundamental rights.").

The privacy interest of sex offenders in keeping their personal information confidential is not a privacy interest of constitutional dimension. *Valentine v. Strickland*, No. 5:08-CV-00993, 2009 WL 9052193, at *8 (N.D. Ohio Aug. 19, 2009)("[T]here is no fundamental right to privacy that is deeply rooted in our Nation's history in the context of sex offender registration statutes."). The decision in *Valentine* is supported by *Doe v. Michigan Department of State Police*, 490 F.3d 491 (6th Cir. 2007).

In *Doe*, the Sixth Circuit considered the interplay between Michigan's SORA and its Holmes Youthful Trainee Act (HYTA). Under SORA, certain juveniles eligible for a diversion program under HYTA without entry of a conviction were required to register as convicted sex offenders despite the absence of a conviction for a sex offense. *Id*. at 494-96. The juveniles argued that the requirement to register under SORA violated the promise of privacy embedded in HYTA. The Sixth Circuit rejected this argument, observing that "[o]ther circuit courts have considered substantive due process arguments against the registration

requirement of sex-offender registries," and "[e]ach . . . has found that the registry laws are constitutional." *Id*. at 499-00. In light of its conclusion that the right of a sex offender to be free from registration "is not a fundamental right deeply rooted in our Nation's history," the *Doe* court applied rational basis scrutiny and determined that Michigan's interest in SORA "satisfies the rational-basis standard." *Id*. at 500-01.

Plaintiff's right to privacy claim is also undercut by the Sixth Circuit's decision in *Cutshall*, 193 F.3d at 481. The *Cutshall* plaintiff argued that publication of his personal information on Tennessee's sex offender registry violated his right to privacy, but the Sixth Circuit disagreed:

> The Constitution does not provide Cutshall with a right to keep his registry information private, and the Act does not impose any restrictions on his personal rights that are fundamental or implicit in the concept of ordered liberty, such as his procreative or marital rights.

*Id*. The Supreme Court has also suggested that publication of personal information about convicted sex offenders is permissible even though it has yet to explicitly address a right to privacy claim.

> The purpose and the principal effect of notification are to inform the public for its own safety, not to humiliate the offender. Widespread public access is necessary for the efficacy of the scheme, and the attendant humiliation is but a collateral consequence of a valid regulation.

*Smith*, 538 U.S. at 99.

Based on the foregoing authority, Plaintiff has not demonstrated he is likely to succeed on his right to privacy claim.

### 5. Privileges and Immunities Clause

Plaintiff also brings a claim under the Privileges and Immunities Clause and argues that SORNA's travel reporting requirements "bar[] [registrants] from free travel." However, SORNA merely requires offenders to keep their registration current. 34 U.S.C. § 20913(a), (c). Travel is not banned under SORNA. *See United States v. Holcombe*, 883 F.3d 12, 18 (2d Cir. 2018) ("SORNA's registration requirement does not violate [a sex offender's] right to travel."); *United States v. Byrd*, 419 F. App'x 485, 491 (5th Cir. 2011) ("We join our sister circuits and hold that SORNA's registration requirements do not implicate the fundamental right to travel of convicted sex offenders because nothing in the statute precludes an offender from entering or leaving another state, being treated as a welcome visitor in the second State, or being treated like other citizens of that State if the offender chooses to permanently relocate.") (quotation marks, ellipses, and brackets omitted); *Bacon v. Neer*, 631 F.3d 875, 878 (8th Cir. 2011) ("The right to travel contention has been rejected by two of our sister circuits and is without merit on the facts of this case because Bacon is free to travel if he registers."); *United States v. Shenandoah*, 595 F.3d 151, 162 (3d Cir. 2010) ("[M]oving from one jurisdiction to another entails many registration requirements required by law which may cause

some inconvenience, but which do not unduly infringe upon any one's right to travel.")

Based on the well-settled authority, it appears Plaintiff cannot succeed on his privileges and immunities claim.

### 6. Unreasonable Seizures

Plaintiff also alleges that the "mandatory registration requirements and restrictions" of SORNA subject registrants to a "continuing seizure," in part because registrants are required to "speculate as to the meaning" of sex offender laws and "know the complex SORA type statutes in every jurisdiction."

However, an unlawful seizure occurs "only when there is a governmental termination of freedom of movement through means intentionally applied." *Brower v. Cty. of Inyo*, 489 U.S. 593, 597 (1989) (emphasis omitted). The registration requirements in SORNA do not amount to a termination of freedom of movement. Indeed, the Sixth Circuit has concluded that registration requirements do not render a sex offender "in custody" for habeas corpus purposes. *Hautzenroeder v. Dewine*, 887 F.3d 737, 741 (6th Cir. 2018); *see also United States v. Shannon*, 511 F. App'x 487, 491-92 (6th Cir. Jan. 14, 2013) (holding that SORNA does not impose "affirmative disability or restraint" on registrants because it does not "physically restrain[]" them or "directly restrict their mobility, employment, or how they spend their time."

Here, Plaintiff has not suffered a restraint of freedom of movement. Plaintiff cannot show a likelihood of success on his unreasonable seizure claim.

### 7. Vagueness and Overbreadth

A statute is void for vagueness if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *United States v. Williams*, 553 U.S. 285, 304 (2008). Additionally, "a law may be invalidated as overbroad if 'a substantial number of its applications are unconstitutional, judged in relation to the statue's plainly legitimate sweep.'" *United States v. Stevens*, 559 U.S. 460, 473 (2010) (quoting *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 n.6 (2008)).

Here, Plaintiff has failed to establish a likelihood of success on the merits of his vagueness and overbreadth claim. As an initial matter, Plaintiff fails to identify the specific statutory language he is challenging, therefore his claim is subject to dismissal on this basis alone. *See McCloud v. United States*, No. 4:11-CV-1721, 2015 WL 224990, at *21 (E.D. Mo. Jan. 15, 2015) (rejecting vagueness challenge as a basis for an ineffective assistance of counsel claim where "movant does not identify what particular language of the statute is vague.")

Moreover, vagueness challenges to SORNA have consistently been rejected by the federal courts, including the Sixth Circuit. *See, e.g., United States v.*

*Holcombe*, 883 F.3d 12, 17 (2d Cir. 2018) (rejecting vagueness challenge to SORNA's definition of reside); *United States v. Paul*, 718 F. App'x 360, 364 (6th Cir. 2017 (SORNA not vague as applied to offender whose state court judgment of conviction absolved him of duty to comply with sex offender registry because any confusion regarding his registration obligations stemmed from the state court judgment and not from SORNA); *United States v. Schofield*, 802 F.3d 722, 730-31 (5th Cir. 2015) (rejecting vagueness challenge to SORNA's definition of sex offense); *United States v. Walker*, 552 F. App'x 646, 647 (9th Cir. 2014) (rejecting vagueness challenge to SORNA's definition of reside); *United Sates v. Bruffy*, 466 F. App'x 239, 243-44 (4th Cir. 2012) (rejecting argument that SORNA's reporting requirements are unconstitutionally vague as applied to transient offenders); *United States v. Fox*, 286 F. Supp.3d 1219, 1224 (D. Kan. 2018) (rejecting argument that SORNA is "overbroad because it applies to non-violent sex offenders as well as violent predators.")

Based on the foregoing, Plaintiff has not shown a likelihood of success on the merits of his vagueness and overbreadth challenge to SORNA.

### C. Irreparable Injury

Plaintiff argues that he will continue to suffer irreparable harm without injunctive relief. The Government fails to address this factor in its Response brief. Because Plaintiff has failed to demonstrate a likelihood of success on the merits of

17

his claims, he is unable to show irreparable injury under the circumstances before this Court. *Gonzales*, 225 F.3d at 625 ("[A] finding that there is simply no likelihood of success on the merits is usually fatal.").

### D. Harm to Others and the Public Interest

Plaintiff argues that there is no harm to others if an injunction is granted because retroactive application of SORNA violates the Constitution. The Government fails to address whether granting Plaintiff's requested relief will harm others. Because Plaintiff cannot demonstrate retroactive enforcement of SORNA is unconstitutional, his assertion that the Government cannot suffer an injury since it has no right to enforce an unconstitutional law is without merit.

Lastly, Plaintiff maintains that it is always in the public interest to preclude the violation of a party's constitutional rights. Again, the Government fails to address this factor in its Response. However, Plaintiff has not demonstrated a likelihood of success on any of his constitutional claims, thus his argument is unavailing.

## IV. CONCLUSION

Accordingly, for the reasons articulated above, Plaintiff's Motion for Temporary Restraining Order and Preliminary/Permanent Injunctive Relief [#2] is DENIED.

SO ORDERED.

Dated: June 7, 2019

s/Gershwin A. Drain
HON. GERSHWIN A. DRAIN
United States District Court Judge

CERTIFICATE OF SERVICE
Copies of this Order were served upon attorneys of record on
June 7, 2019, by electronic and/or ordinary mail.
/s/ Teresa McGovern
Case Manager